**BORDE LAW PLLC**
Manish Borde
1700 7th Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 531-2722

HONORABLE WHITMAN L. HOLT
HEARING DATE: October 15, 2025
HEARING TIME: 2:00 p.m.
LOCATION: Telephonic

**RAINES FELDMAN LITTRELL LLP**
Robert S. Marticello (admitted *Pro Hac Vice*)
*rmarticello@raineslaw.com*
Michael L. Simon (admitted *Pro Hac Vice*)
*msimon@raineslaw.com*
4675 MacArthur Court, Suite 1550
Newport Beach, CA 92660
Telephone: (310) 440-4100/Facsimile: (310) 691-1943

Attorneys for Wilmington Savings Fund Society, FSB,
not in its individual capacity, but solely as Owner of
MFA 2022-RTL1 Trust and Lima One Capital, LLC

UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>ICAP ENTERPRISES INC., *et al*.<br><br>Debtors.[1] | Chapter: 11<br>Lead Case No.: 23-01243-WLH11<br>Jointly Administered<br><br>Adv. Pro. No.: 24-80022-WLH<br><br>**REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIM COMPLAINT** |

[1] The "Debtors" (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding1, LLC (23-01256-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01253-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253- 11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250- 11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11) ; Vault Holding, LLC (23-01270-11); iCap Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); and iCap Holding 6 LLC (23-01274-11).

Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner of MFA 2022-RTL1 Trust; and Lima One Capital, LLC,

    Plaintiffs,

           v.

VH 1121 14th, LLC; and VH Willows Townhomes, LLC,

    Defendants.

Lance Miller and Seth Freeman, Co-Trustees of the iCap Trust, on behalf of the iCap Trust and Contributing Claimants to the iCap Trust,

    Counter-Claimants.

           v.

Wilmington Savings Fund Society, FSB, in its individual capacity, and as Owner of MFA 2022-RTL1 Trust; and Lima One Capital, LLC,

    Counter-Defendants.

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................1

II. RELEVANT BACKGROUND ...................................................4

III. LEGAL STANDARD .................................................................6

    A. The Trustees' Claims are Subject to the Heightened Pleading Standard Under Rule 9(b) ...........................................6

    B. The Court Can and Should Consider Contradictory Allegations in the Amended Complaint ....................................8

IV. ALL CLAIMS AGAINST WILMINGTON MUST BE DISMISSED ..... 10

V. THE INVESTOR CLAIMS MUST BE DISMISSED................................ 11

    A. The Trustees Lack Standing to Pursue Investor Claims.................. 11

    B. The Plan Excludes the Investor Claims ............................................ 17

    C. The Trustees Are Required to Specifically Identify the Assigning Investors ..................................................................... 22

    D. The Trustees Failed to Adequately Plead Aiding and Abetting Claims ........................................................................ 23

        1. No Actual Knowledge of the Alleged Ponzi Scheme .......... 23

        2. No Substantial Assistance ...................................... 30

        3. No Proximate Cause of Any Damages to Investors............. 34

VI. THE UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED ........ 36

VII. THE FRAUDULENT TRANSFER CLAIMS MUST BE DISMISSED .. 38

    A. The Fraudulent Transfer Claims Lack the Requisite Particularity .. 38

    B. The Trustees Lack Standing to Bring State Law Fraudulent Transfer Claims.............................................................. 38

    C. Ninth Circuit Law Precludes the Trustees' Fraudulent Transfer Claims ........................................................................ 40

        1. The Fraudulent Transfer Claims Must Be Dismissed Because the Trustees Seek to Avoid Only Payments on Secured Obligations................................................ 40

        2. The Trustees Should Not Be Granted Leave to Amend Again................................................................. 41

    D. The Actual Fraudulent Transfer Claims Are Not Adequately Pled.................................................................. 47

    E. The Constructive Fraudulent Transfer Claims Should Be Dismissed ...................................................................... 49

    F. Pre-September 29, 2021 Transfers Under 11 U.S.C. § 548 Are Time-Barred ................................................................. 49

VIII. CONCLUSION .................................................................. 51

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page i

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

24-80022-WLH    Doc 44    Filed 10/01/25    Entered 10/01/25 20:55:47    Pg 3 of 59

**Cases**

*Adams v. Johnson,*
    355 F.3d 1179 (9th Cir. 2004) ........................................................................9

*Am. Title Ins. Co. v. Lacelaw Corp.,*
    861 F.2d 224 (9th Cir. 1988) ........................................................................ 39

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................... 9, 23, 38

*Bane v. Sigmundr Expl. Corp.,*
    848 F.2d 579 (5th Cir. 1988) ........................................................................ 32

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................... 23

*Bly-Magee v. State of California,*
    236 F.3d 1014 (9th Cir. 2001) ...................................................................... 35

*Brown v. Bank of Am., N.A.,*
    660 F. App'x 506 (9th Cir. 2016) ........................................................... 22, 35

*Caplin v. Marina Midland Grace Trust Co. of New York,*
    406 U.S. 416 (1972) ...................................................................................... 11

*Casey v. U.S. Bank. of California, N.A.,*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .................................................. 24, 32

*Chang v. Wells Fargo Bank, N.A.,*
    2020 WL 1694360, at *4 (N.D. Cal. 2020) .......................................... passim

*Damian v. Fossum,*
    2021 WL 4744644, at *2 (W.D. Wash. 2021) ................................................6

*Engelhart v. Strong,*
    25 Wash. App. 2d 1017, *9 ...................................................................... 19, 36

*ESG Cap. Partners v. Stratos,*
    828 F.3d 1023 (9th Cir. 2016) .........................................................................7

*Facebook, Inc., v. MaxBounty, Inc.,*
    274 F.R.D. 279 (N.D. Cal. 2011) ............................................................. 19, 34

*Grede v. Bank of New York Mellon,*
    598 F.3d 899 (3d Cir. 2010) ..................................................................... 14, 15

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page ii

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

24-80022-WLH     Doc 44     Filed 10/01/25     Entered 10/01/25 20:55:47     Pg 4 of 59

*In re Acequia,*
  34 F.3d 800 (9th Cir. 1994) ........................................................... 38

*In re AgriBioTech, Inc.,*
  319 B.R. 207 (D. Nev. 2004) ........................................................ 15

*In re All Terrain, LLC,*
  625 B.R. 462 (Bankr. D. Idaho 2020) .......................................... 40

*In re Berjac of Oregon,*
  538 B.R. 67 (D. Or. 2015) ............................................................... 6

*In re Century Aluminum Co. Secs. Litig,*
  729 F.3d 1104 (9th Cir. 2013) ......................................................... 9

*In re Consolidated Meridian Funds,*
  485 B.R. 604 (Bankr. W.D. Wash. 2013) ............................. passim

*In re EPD Inv. Co., LLC,*
  114 F.4th 1148 (9th Cir. 2024) ........................................ 26, 44, 47

*In re Finjan Holdings, Inc,.*
  58 F.4th 1048 (9th Cir. 2023) ......................................................... 6

*In re First Alliance Mortgage, Co.,*
  471 F.3d 977 (9th Cir. 2006) ............................................... passim

*In re Fitness Holdings Int'l,*
  714 F.3d 1141 (9th Cir. 2013) ...................................................... 49

*In re JTS Corp.,*
  617 F.3d 1102 (9th Cir. 2010) ...................................................... 38

*In re LLS Am.,*
  526 B.R. 841 (E.D. Wash 2015) ................................................... 45

*In re Mihranian,*
  2017 WL 2775044, at *7 (B.A.P. 9 h Cir. 2017) ........................ 7, 8

*In re Moriarty,*
  2014 WL 6623005, at *8 (Bankr. C.D. Cal. 2014) ........................ 7

*In re Mortgage Fund '08 LLC,*
  527 B.R. 351 (N.D. Cal. 2015) ..................................................... 31

*In re Parkinson Seed Farm, Inc.,*
  640 B.R. 218 (Bankr. D. Idaho 2022) .......................................... 40

*In re Southwest Supermarkets, L.L.C.,*
  315 B.R. 565 (Bankr. D. Ariz. 2004) ........................................... 14

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page iii

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

*In re Syntax-Brillian Corp.*,
2016 WL 11165634 at *7 (Bankr. D. Del. 2016) ............................................ 46

*In re Yellow Cab Cooperative, Inc.*,
602 B.R. 357 (2019) .......................................................................................... 13

*K & S P'ship v. Cont'l Bank, N.A.*,
952 F.2d 971 (8th Cir. 1991) ............................................................................ 34

*Koch Refining v. Farmers Union Cent. Exch., Inc.*,
831 F.2d 1339 (7th Cir. 1987) .......................................................................... 18

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......................................................................................... 12

*MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*,
2023 WL 5725517, at *8 (N.D. Cal. 2023) ........................................... 22, 35, 36

*Napear v. Bonneville Int'l Corp.*,
669 F. Supp. 3d 948 (E.D. Cal. 2023) ................................................................ 9

*Neilson v. Union Bank of California, N.A.*,
290 F. Supp. 3d 1101 (C.D. Cal. 2003) ....................................................... 30, 39

*Norcon Builders LLC v. GMP Homs VG LLC*,
161 Wn. App. 474 (2011) .................................................................................. 36

*Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
446 F. Supp. 2d 163 (S.D.N.Y. 2006) ............................................................... 24

*Puri v. Khalsa*,
674 F. App'x 679 (9th Cir. 2017) .................................................................. 7, 30

*Ritchie Capital Management, L.L.C. v. General Elec. Capital Corp.*,
821 F.3d 349 (2d Cir. 2016) .............................................................................. 19

*Semi-Tech Litig., LLC v. Bankers Trust Co.*,
272 F.Supp.2d 319 (S.D.N.Y 2003) .................................................................. 15

*Smith v. Arthur Andersen LLP*,
421 F.3d 989 (9th Cir. 2005) ............................................................................ 12

*Smith v. First Union Nat. Bank*,
2002 WL 31056104, at *2 (S.D. Fla. 2002) ...................................................... 29

*SMP Sales Management, Inc. v. Fleet Credit Corp.*,
960 F.2d 557 (5th Cir. 1992) ............................................................................ 37

*Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*,
125 F.3d 481 (7th Cir. 1997) .................................................................. 9, 25, 43

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page iv

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001)...................................................................9

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007)................................................................ 10

*Vess v. Ciba-Geigy Corp., USA,*
  317 F.3d 1097 (9th Cir. 2003).................................................................6

*Williams v. California 1st Bank,*
  859 F.2d 664 (9th Cir. 1988) ..................................................... passim

*Zazzali v. Hirschler Fleischer, P.C.,*
  482 B.R. 495 (D. Del. 2012) ............................................................... 15

**Statutes**

11 U.S.C. § 548 .................................................................................... 50

11 U.S.C. § 548(a)(1) ........................................................................... 49

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page v

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

# I.    INTRODUCTION[2]

As demonstrated by the Opposition itself, the Motion is well-taken and should be granted.  The Opposition and the arguments therein highlight the fatal deficiencies in the Amended Complaint.  The Trustees are wrong on all fronts.  They misstate the applicable standard.  They misunderstand the substantive legal elements.  They fail to plead the requisite allegations.  The Trustees continually run afoul of controlling Ninth Circuit law.  There can be no serious question that the Amended Complaint must be dismissed.

The Trustee's aiding and abetting and unjust enrichment claims (collectively, the "**Investor Claims**") must be dismissed for three independent reasons.

First, the Trustees lack standing to assert the Investor Claims.  There is no dispute that the Trustees are pursuing the Investor Claims on behalf of, and to collect money allegedly owing to, third parties, the Assigning Investors.  This fact is repeated throughout the Opposition.  In addition, there is no dispute that the Ninth Circuit holds that a trustee cannot pursue the claims of third parties notwithstanding an assignment of such claims.  *See Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir. 1988).  The only question is whether *Williams* controls here.  The Trustees primary argument on this point—that they can pursue the Investor Claims because they are trustees *under a plan*—is a distinction without a difference.  This is because the three concerns that informed the Ninth Circuit's holding in *Williams* nonetheless exist in this case.  While the Trustees and the cases they cite may disagree with the Ninth Circuit's rationale in *Williams*, it is and remains the law.

---

[2] All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the *Motion to Dismiss Amended Counterclaim Complaint* [Docket No. 38] (the "**Motion**").

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 1

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

Second, the Plan excludes the Investor Claims from the iCap Trust. While the Trustees argue that the Counter-Defendants' position is "simply wrong" and contrary to the Plan's express terms, the Opposition proves the opposite. The Trustees can pursue "Contributed Claims." The Plan defines the Contributed Claims to exclude "any Individual Investor-Specific Claims." (*See* RJN, Ex. 2, Plan at 72 of 135:14-16.) "Individual Investor-Specific Claims" are defined as claims where the investors have "independent legal standing. . . ." The Plan expressly identifies "claims arising from an investor's specific situation" as an example of an "Individual Investor-Specific Claim," which is excluded from "Contributed Claims." (*See id.* at 29 of 135:11-13.) These definitions are not in dispute. Indeed, the Trustees admit that "Individual Investor-Specific Claims are those claims unique to an individual Investor." (*See* Opp'n. at 24:1-2.)

The court's resolution of this issue hinges on the Trustees' assertion that the Investor Claims "are not unique to an individual Investor." (*See* Opp'n. at 24:7-8.) The Trustees' position is wrong. The Trustees' position is contrary to the arguments they make, the cases they cite, and the very premise upon which the Trustees rely to assert the Investors Claims—that the Investor Claims belong to the Assigning Investors. The Investors Claims are particularized claims unique to the Assigning Investors and their specific circumstances, or else, *there would be no claims to assign.* Whatever the Trustees assert is the purpose of the Plan, it is irrelevant. The express terms of the Plan control. The Plan could have expressly and clearly included the Investor Claims, but it did not do so. The Investors Claims were left to the Assigning Investors to pursue in their own names.

Third, the Trustees have failed to allege facts to establish the Investor Claims. The allegations in the Amended Complaint come nowhere close to

establishing that the Counter-Defendants had actual knowledge of the Debtors' alleged Ponzi scheme. In fact, the Trustees' allegations that the Counter-Defendants failed to conduct the due diligence or investigation *that would have revealed the Debtors' alleged Ponzi scheme*, even if true, prove that the Counter-Defendants *did not have actual knowledge of such Ponzi scheme*. The Trustees' position is premised on the wrong standard. The Trustees' allegations and arguments amount to, at most, constructive notice, which is not sufficient. Moreover, the Trustees have not alleged facts to establish a claim for unjust enrichment and they do not dispute that repayment of a secured loan cannot constitute unjust enrichment.

The Trustees' claims to avoid alleged fraudulent transfers must be dismissed. Critically, the Trustees concede, as they must, that under the Ninth Circuit's decision in *In re First Alliance Mortgage, Co.*, 471 F.3d 977 (9th Cir. 2006), payments on account of secured debts cannot be avoided. The Trustees argue that an exception to *First Alliance* exists here because they seek to avoid the underlying secured loans that were repaid. Assuming the Trustees' position is true, *nowhere* in the Amended Complaint do the Trustees seek to avoid any liens, security interests or obligations. Instead, by the Amended Complaint, the Trustees seek to avoid payments. That's it. Moreover, the Trustees should not be granted leave to amend again because the few factual allegations in the Amended Complaint demonstrate that Lima's loans cannot be avoided. Rather, according to the allegations in the Amended Complaint, Lima's loans were incurred for and used for ordinary business purposes and to pay ordinary business debts. As made clear in *First Alliance*, the fact the Lima's loans may have been incurred during the time

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 3

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

of an alleged Ponzi scheme does not establish that such loans were incurred with the required fraudulent intent. They were not.

By their complaint, the Counter-Defendants put a narrow issue before this court, *i.e.* the disposition of approximately $5.1 million in sale proceeds in escrow. Unfortunately, the parties' mediation ended without a settlement. The Trustees responded with the Amended Complaint, seeking to subject the Counter-Defendants to an alleged $230,000,000 worth of exposure for aiding and abetting the Debtors' alleged Ponzi scheme in addition to avoiding and recovering repayments on secured debt admittedly used to pay ordinary expenses. The problem is that the Trustees do not have the facts to support these claims as to the Counter-Defendants. The substantial shortcomings of the Amended Complaint make sense when viewed in context. The Trustees' claims are being asserted for leverage, not due to merit.

In sum, each category of claims asserted by the Trustees fails and does so because such claims are not supported by a cognizable legal theory and, even if so, sufficient facts to support it. The Amended Complaint's factual allegations, if true, do not allege plausible claims against Wilmington and Lima. Rather, they preclude such claims. Accordingly, the Amended Complaint must be dismissed.

## II. <u>RELEVANT BACKGROUND</u>

On August 16, 2025, Wilmington[3] and Lima filed a complaint for declaratory relief against VH 1121 and VH Willows only. (*See* Docket No. 1.) The purpose of the complaint was to obtain a determination by the court with

---

[3] Unless stated otherwise, all references to Wilmington herein are to Wilmington solely as Owner of MFA 2022-RTL1 Trust and not in its individual capacity.

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 4

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

respect to the sale proceeds in escrow. (*See* Compl. at 13:24-14-3.) Wilmington and Lima's complaint did not seek any relief related to iCap Investments. (*See id.*)

On September 19, 2025, VH 1121 and VH Willows filed an answer and counterclaims. (*See* Docket No. 4.) By stipulation and order entered in the main bankruptcy case, Wilmington and Lima's deadline to respond to VH 1121 and VH Willows' counterclaims was 14 days prior to the commencement of mediation. (*See* Case No. 23-01243-WLH11, Docket No. 1338.) On January 15, 2026, Wilmington and Lima filed an answer to VH 1121 and VH Willows' counterclaims. (*See* Docket No. 17.) By their answer, Wilmington and Lima reserved their right to assert and did not waive all affirmative and other defenses, including that the counterclaims fail to state a claim upon which relief can be granted. (*See id.* at 7:3-7.) On January 29, 2025, the parties participated in a mediation before the Hon. Martin R. Barash, which did not result in a resolution.

On July 31, 2025, the Trustees filed the Amended Complaint. Through the Amended Complaint, the Trustees assert claims against the Counter-Defendants for the first time. The Trustees were not a party to the prior counterclaim complaint. (*See* Docket No. 4.) By the Amended Complaint, the Trustees specifically amended the entire counterclaim complaint and asserted new allegations. (*See* Ad. Compl. at 2, n.1.) Moreover, the Trustees filed the Amended Complaint without the court's prior authority as required by Rule 15(a)(2).

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 5

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

24-80022-WLH    Doc 44    Filed 10/01/25    Entered 10/01/25 20:55:47    Pg 12 of 59

# III. LEGAL STANDARD

## A. The Trustees' Claims are Subject to the Heightened Pleading Standard Under Rule 9(b)

It is the law in the Ninth Circuit that claims grounded in fraud or that sound in fraud must satisfy the particularity requirement of Rule 9(b). *See Vess v. Ciba-Geigy Corp.*, *USA,* 317 F.3d 1097, 1104-05 (9th Cir. 2003). According to the Ninth Circuit:

> In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' **and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)**.

*See id.* (emphasis added.). "Rule 9(b) applies where a claim is 'grounded in fraud' or 'sound[s] in fraud,' even if fraud is not an essential element of the cause of action." *In re Finjan Holdings, Inc,.* 58 F.4th 1048, 1057 (9th Cir. 2023) (citing and quoting *Vess*).

Claims based on a Ponzi scheme, including claims for aiding and abetting, for unjust enrichment, and to avoid fraudulent transfer sound in fraud and are thus subject to Rule 9(b). *See In re Berjac of Oregon*, 538 B.R. 67, 74 (D. Or. 2015) (stating that "because a Ponzi scheme, and thus fraud, is the 'gravamen of the entire action,' the heightened pleading standard of Rule 9(b) applies to all of plaintiff's claims against the banks and J & R."); *see also Damian v. Fossum*, 2021 WL 4744644, at *2 (W.D. Wash. 2021) ("the gravamen of [the receiver]'s complaint is that TGC made fraudulent transfers to Defendant as part of a Ponzi scheme, which

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 6

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

Defendant knew or should have known. As such, the claims sound in fraud and must satisfy the heightened pleading standard. Fed. R. Civ. P. 9(b).").

The Amended Complaint and each of the Trustees' claims therein are grounded in fraud, *i.e.*, the Debtors' alleged Ponzi scheme, and the Trustees do not contend otherwise. (*See* Ad. Compl. at ¶¶ 3-4, aiding and abetting; *see also* Opp'n. at 48:21-49:2, unjust enrichment; *id.* at 4:23-5:2, fraudulent transfers.) The pleading standard cases cited by the Trustees do not compel a different result. The Ninth Circuit's decision in *ESG Capital Partners* did not involve an alleged Ponzi scheme, and the decision did not analyze whether a Rule 9(b) standard should apply to the aiding and abetting claims at issue in that case. Rather, the Ninth Circuit, without analysis, treated the aiding and abetting claims as "nonfraud" claims and applied Rule 8. *See ESG Cap. Partners v. Stratos,* 828 F.3d 1023, 1029 (9th Cir. 2016). The Ninth Circuit has applied Rule 9(b) to aiding and abetting claims. *See Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017). While, in *Moriarty*, the court did not apply Rule 9(b) to the plaintiff's constructive fraud claims, it did, following *Vess*, apply Rule 9(b) to the intentional fraud claims. *See In re Moriarty*, 2014 WL 6623005, at *8 (Bankr. C.D. Cal. 2014). Moreover, in *Moriarty*, the court did not have to reach the decision of whether the constructive fraudulent transfer claims were grounded in fraud as the court dismissed those claims because the complaint merely recited the statutory language without stating sufficient facts to state a plausible claim. *See id.* at *11. The language quoted by the Trustees from the Ninth Circuit BAP's decision in *In re Mihranian* questioned whether Rule 9(b) should apply to *all* intentional fraud claims, such as those premised on an intent to hinder or delay (and not defraud). *See In re Mihranian*, 2017 WL

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

2775044, at *7 (B.A.P. 9 h Cir. 2017). Here, because the Trustees' claims sound in fraud, under Ninth Circuit law, Rule 9(b) applies.

The fact that the claims are brought by plaintiffs serving as "trustees" does not change the standard. The Trustees are not entitled to any leniency. The Trustees are not unfamiliar with the Debtors. The Trustees were picked by the Debtors, are an extension of the Debtors, and are not independent trustees selected by the Office of the United States Trustee. Co-Trustee Miller was selected by Chris Christensen and the Debtors as the Debtors' Chief Restructuring Officer pre-petition and has been with the Debtors since at least July 14, 2023. (*See* Supp. RJN, Ex. 7, Docket No. 1, Voluntary Petition at 14, Letter of Agreement effective as of July 14, 2023.) Moreover, as to the aiding and abetting and unjust enrichment claims, the Trustees offer no reason why the assignment of a claim reduces the pleading standard or a case to support such. Even in the *Consolidated Meridian Funds* case relied on by the Trustees, the liquidating trustee's aiding and abetting claims were dismissed under Rule 9(b) because of the trustee's failure to specifically allege the requisite what, when, and how. *See In re Consol. Meridian Funds*, 485 B.R. 604, 625 (Bankr. W.D. Wash. 2013).

## B. The Court Can and Should Consider Contradictory Allegations in the Amended Complaint

The Counter-Defendants are not, as asserted by the Trustees, requesting that the court make factual determinations in their favor or resolve the veracity of the Trustees' allegations. (*See* Opp'n. at 6:18-7:2.) In many respects, the factual allegations in the Amended Complaint, accepted as true, defeat the Trustees' claims. The court can consider such allegations in determining whether a plaintiff "plead[s] himself out of a claim" and whether the Amended Complaint states

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 8

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

claims upon which relief can be granted.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Soo Line R. Co. v. St. Louis Southwestern Ry. Co.,* 125 F.3d 481, 483 (7th Cir. 1997) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim. . . .")  Separately, the Amended Complaint's conclusory and contradictory allegations are not entitled to an assumption of truth and the non-conclusory and non-contradictory allegations do not warrant the inferences argued in the Opposition.

"[U]nwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).  On a motion to dismiss, courts need not accept as true "unwarranted deductions of fact, or unreasonable inferences," and can disregard contradictory allegations in a complaint.  *See Napear v. Bonneville Int'l Corp.*, 669 F. Supp. 3d 948, 964 (E.D. Cal. 2023) (citing *Sprewell*, 266 F.3d at 988).  A complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *see also In re Century Aluminum Co. Secs. Litig,* 729 F.3d 1104 (9th Cir. 2013) (affirming dismissal of complaint because, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation.  Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible.") (internal quotation marks and citations omitted).

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

## IV. ALL CLAIMS AGAINST WILMINGTON MUST BE DISMISSED

The Trustees' claims against Wilmington (individually and in its limited capacity as Owner of MFA 2022-RTL1 Trust) must be dismissed under Rules 12(b)(6) and 9(b).  The Trustees do not identify or cite to a single allegation in the Amended Complaint against Wilmington.  Again, Wilmington's name appears in only two places in the Amended Complaint—in the caption and in paragraph 8 identifying Wilmington as a party.  Moreover, the Trustees have not cited to any support for the proposition they can simply lump Lima and Wilmington together in the Amended Complaint.  To the contrary, the Trustees' approach is not permitted.  *See Swartz v. KPMG LLP,* 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together, but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.").

The Trustees' argument that they seek to avoid the liens asserted by Wilmington is not supported by the Amended Complaint.  (*See* Opp'n. at 7-9.)  The Amended Complaint does not request the avoidance of any liens whatsoever and the Opposition does not once cite to any part of the Amended Complaint to support the Trustees' argument.  **Nowhere** in the Amended Complaint is the word "lien" even mentioned.  Moreover, the affirmative claims of Wilmington and Lima through their complaint against VH 1121 and VH Willows are irrelevant as they do not constitute a claim by the Trustees against Wilmington.[4]

---

[4] The Opposition's argument that Wilmington and Lima view themselves as one in their complaint is misleading, in addition to being irrelevant. (*See* Opp'n. at 50:12-18.) As recognized in the Opposition, the 2022 Bridge Loans were assigned by Lima to Wilmington. (*See id.* at 49:19-22, citing complaint at ¶¶ 12, 24, 41, 75 and 78.)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

## V.   THE INVESTOR CLAIMS MUST BE DISMISSED

### A.   The Trustees Lack Standing to Pursue Investor Claims

The Ninth Circuit's holding in *Williams* mandates the dismissal of the Investor Claims.   The Trustees' pages of argument on this point, and all the cases they cite, stand for a single proposition—the Trustees have standing because they are *post-confirmation trustees* with the powers in the Plan and not bankruptcy trustees with only the powers under the Bankruptcy Code.   However, under the Ninth Circuit's rationale in *Williams*, this is a distinction without a difference.   This distinction is not relevant because it does not address the three concerns that drove the Ninth Circuit's holding in *Williams*.   Moreover, this distinction alone does not mean that *Williams* and *Caplin* are simply inapplicable to this case, as contended by the Trustees.   (*See* Opp'n. at 14:4-6.)   Notably, there were factual differences between *Williams* and *Caplin*, including that the trustee in *Williams* received assignments.   The Ninth Circuit held "that *Caplin* and its progeny control" notwithstanding the factual differences between the two cases because "substantially the same problems" that existed in *Caplin* existed in *Williams*.  *See Williams v. California 1st Bank*, 859 F.2d 664, 666 (9th Cir. 1988); and *Caplin v. Marina Midland Grace Trust Co. of New York*, 406 U.S. 416 (1972).   The same three concerns that informed the Ninth Circuit's decision in *Williams* exist here. The Trustees' arguments to the contrary are based on a misapplication or misunderstanding of the Ninth Circuit's concerns.

First, the Assigning Investors "plainly remain the real parties in interest in" this action.  *See Williams*, 859 F.2d at 666.   The Ninth Circuit's concern was not merely that the trustee's pursuit of the investor claims would "run afoul of the

statutory scheme. . . ." (*See* Opp'n. at 16:3-7.)  Instead, the Ninth Circuit's concern was that, notwithstanding the assignments, the trustee was seeking to collect money not owed to the estate.  Neither a bankruptcy estate nor a post-confirmation trust can pursue claims for monies that belong to third parties.  *See, e.g., Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1001-03 (9th Cir. 2005) (providing that a bankruptcy trustee or estate representative is unable to assert third party claims that belong to individual creditors); *see also Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992) (three-part test for Article III standing).  Here, as argued in the Motion, the Trustees are pursuing the Investor Claims on behalf of the Assigning Investors and *to collect monies allegedly owing to the Assigning Investors*.  (*See* Mot. at 13:6-19; *see also* Ad. Compl. at 14, ¶¶ 51 and 54.)  The Trustees admit that they are pursuing the rights of third parties and amounts allegedly owing to third parties. (*See, e.g.*, Opp'n. at 2:18-19, stating that the Trustees are seeking "to recover money on behalf of Investors. . . ."; *see also id.* at 3:8-9, stating that the Trustees are "acting on behalf of the assigning Investors. . . .").  Similar to *Williams*, under the Plan, any recoveries on the Contributed Claims will pay administrative costs and then be distributed to the investors (with the Assigning Investors receiving a larger share). (*See* Mot. at 13:23-25.)  The Trustees do not dispute these facts.

Second, the Debtors (and the iCap Trust as the successor to the Debtors) have "no claim of [their] own that [they] could press against" the Counter-Defendants.  *See Williams*, 859 F.2d at 667.  Contrary to the Trustees' argument, the trustee in *Williams* was not standing in the shoes of the debtor.  (*See* Opp'n. at 19:16-17.)  The trustee was pursuing assigned claims of third parties.  The Ninth Circuit recognized that, "standing in the creditors shoes, the Trustee would not be vulnerable to" the defendant's defenses against the debtor.  *See Williams*, 859 F.2d

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 12

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

24-80022-WLH    Doc 44    Filed 10/01/25    Entered 10/01/25 20:55:47    Pg 19 of 59

at 667. The Trustees' argument that, unlike the trustee in *Williams*, they are pursuing the Investor Claims as assignees thereof and are not acting as representatives of the Debtors misses the point. (*See* Opp'n. at 19:16 to 20:1.) The Ninth Circuit's concern was that, *absent the assignment*, the debtor had no claim of its own to pursue. *See Williams*, 859 F.2d at 667. Here, *exactly* as was the case in *Williams*, the Trustees, as the successor of the alleged principal wrongdoer, stand *in pari delicto* with any alleged aider and abettor and have no claim to pursue.[5] Moreover, an alleged aider and abettor has a subrogation claim against the principal wrongdoer, as recognized in *Williams*. *See id.* Thus, the Trustees' assertion that "there are no subrogation issues" is not accurate.

Third, this case presents the same risk of inconsistent rulings as in *Williams*. The Trustees again misunderstand and misapply the Ninth Circuit's concern. The Ninth Circuit was not concerned with inconsistent rulings *on the assigned claims*. (*See* Opp'n. at 16:12-14.) The Ninth Circuit was concerned with inconsistent rulings with respect to investors who *did not* assign their claims. *See Williams*, 859 F.2d at 667 ("[A]lthough those investors who assigned their claims are precluded from brining individual suits, there remains the potential for inconsistent actions by those who did not assign."). There is no dispute that, in this case, as in

---

[5] The Counter-Defendants expressly reserve all rights related to the *in pari delicto* defense because (1) the application of in pari delicto depends on the specific but yet to be identified Assigning Investors and (2) whether the iCap Trust is pursuing assigned claims or not, the plaintiff in this action and *the party* pursuing such claims is the successor to the Debtors, who is subject to the *in part delicto* defense. *See, e.g., In re Yellow Cab Cooperative, Inc.*, 602 B.R. 357 (2019) (holding that the *in pari delicto* defense barred Chapter 11 trustees' claims). Moreover, the Ninth Circuit's holding in *Williams* could be read to stand for the broader proposition that the principal bad actor, here the Debtors who, according to the Trustees, conducted a Ponzi scheme, should not be permitted to sue third parties for allegedly aiding in the scheme they inflicted (through an assignment or otherwise).

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 13

BORDE LAW PLLC
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

*Williams*, the Trustees did not receive an assignment from all investors. [6] Moreover, in this case, there exists the added risk of the concurrent pursuit and potential for inconsistent rulings on the Investor Claims asserted by the Trustees because the Plan provides that such claims are left for the investors to pursue.

The Trustees' argument that the risk of inconsistent rulings is no basis to deny the Trustees' authority to pursue the Investor Claims is irrelevant. (*See* Opp'n. at 16:15-18:5 and 20:1-3.) The Ninth Circuit holds the opposite—a risk of inconsistent rulings between the Trustees and the non-Assigning Investors is a reason to hold that the Trustees lack standing to pursue the Investor Claims. *See Williams*, 859 F.2d at 667. The Trustees admit this risk exists; they simply disagree with the Ninth Circuit. (*See* Opp'n. at 20:1-3.) Moreover, each authority cited by the Trustees to support their disagreement with *Williams* is by a court outside the Ninth Circuit that is not bound by the *Willaims* decision, *e.g.*, the District of Delaware (*Zazzali*), the Third Circuit (*Grede*), and the Southern District of New York (*Semi-Tech Litigation*). While courts outside the Ninth Circuit are free to disagree with its rulings, the Trustees are not. [7]

The Trustees' heavy reliance on the *Consolidated Meridian Funds* decision is mistaken. The bankruptcy court in *Consolidated Meridian Funds* did not address the concerns enunciated by the Ninth Circuit in *Williams*. The bankruptcy court's

---

[6] While the Trustees' argument tracks the rationale by the Third Circuit in *Grede*, the Third Circuit was responding to the court's holding in *Caplin* and the Third Circuit did not discuss, and is not bound by, the Ninth Circuit's holding in *Williams*.

[7] The Trustees also cite to an Arizona bankruptcy court decision, *In re Southwest Supermarkets¸ L.L.C.*, 315 B.R. 565, 570 (Bankr. D. Ariz. 2004). However, in that case, the court found that the Ninth Circuit's third concern was not applicable "because here all of the holders of the claims assigned them to the Trustee." *See id.* at 571 (vacated in part on reconsideration by *In re Southwest Supermarkets, L.L.C.*, 376 B.R. 281 (Bankr. D. Ariz. 2007).

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 14

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

holding was based on the determination that the trustee was "acting as the court-appointed liquidating trustee under the Plan." *See In re Consolidated Meridian Funds*, 485 B.R. 604, 612 (Bankr. W.D. Wash. 2013). The cases cited by the Trustees rely on this same faulty distinction. *See, e.g.*, *Grede v. Bank of New York* Mellon, 598 F.3d 899, 903 (3d Cir. 2010); *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 510 (D. Del. 2012); *Semi-Tech Litig., LLC v. Bankers Trust Co.*, 272 F.Supp.2d 319, 324 (S.D.N.Y 2003). However, as discussed above, this distinction does not address the Ninth Circuit's three concerns, which exist in this case.

Moreover, the decisions relied upon by the Trustees are decisions by courts that are not bound by the Ninth Circuit and that disagreed with it or did not follow it. In fact, in reaching its decision in *Grede*, the Third Circuit recognized that the Ninth Circuit's decision was applicable to its case—a case involving the trustee of a plan liquidating trust—and stated that it "must choose between the second circuit's holding and the ninth's." *See Grede*, 598 F.3d at 901; *see also Zazzali*, 482 B.R. at 510 (finding *Williams* inapplicable and, instead, following *Grede* and *Semi-Tech Litigation*); *Semi-Tech Litig., LLC*, 272 F.Supp.2d at 323 ("With respect, this Court does not find *Williams* persuasive."). The bankruptcy court in *Consolidated Meridian Funds* incorrectly relied on the decisions in *Grede* and *Semi-Tech Litigation* when the rationale in those decisions was contrary to the Ninth Circuit. *See In re Consolidated Meridian Funds*, 485 B.R. at 611-12.

*Consolidated Meridian Funds* also interpreted *Williams* too narrowly. The Ninth Circuit's holding in *Williams* is not simply that a trustee cannot assert claims that are not property of the estate. (*See* Opp'n. at 13:9-12.) As recognized by the district court in *AgriBio Tech*, the bankruptcy estate includes after acquired property. *See In re AgriBioTech, Inc.*, 319 B.R. 207, 212 (D. Nev. 2004) (quoting

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 15

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

11 U.S.C. § 541(a)(7)).  If the Ninth Circuit's concern in *Williams* was as limited as argued by the Trustees or as stated by the court in *Consolidated Meridian Funds*, then the assignment of claims to the trustee in *Williams* would have addressed such concern.  It did not.

Whether the investors claims are being pursued under the Plan, as opposed to pre-confirmation, is irrelevant because, as argued by the Trustees, their standing is derived from the assignment of the Investor Claims to the iCap Trust.  (*See* Opp'n. at 2:17-18; *see also id.* at 21:19-21.)  As the iCap Trust is nothing more than an extension and successor of the Estates created by the Code, there is no principled reason why the Ninth Circuit's holding in Williams is not controlling in this case. Neither the pre-confirmation Estates nor the iCap Trust would have standing to pursue the Investor Claims absent an assignment.  This fact cannot be disputed. However, according to the Ninth Circuit, the investors' assignments do not confer standing under the circumstance of this case.  The trustee in *Williams* had express assignments of investor claims and was pursuing those claims.  The Ninth Circuit held that "the assignments notwithstanding, the investors plainly remain the real parties in interest in these actions."  *See Williams*, 859 F.2d at 666.  The assignments did not change the fact that the money to be collected on the assigned claims was money not owed to the plaintiff trustee.  *See Williams*, 859 F.2d at 666. The same is true here.  The Trustees do not dispute the fact that, as argued in the Motion, the investors remain the real parties in interest under the Plan.  The proceeds will be distributed to the investors after satisfying iCap Trust costs.  (*See* Mot. at 13:20-14:2.)

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 16

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

## B. The Plan Excludes the Investor Claims

The Trustees' asserted Investor Claims for aiding and abetting and unjust enrichment were excluded from the iCap Trust. There is no dispute regarding the key definitions in the Plan. The Counter-Defendants agree (as argued in the Motion) that, under the Plan, the Trustees can pursue any Causes of Action that are "Contributed Claims." The definition of Contributed Claims in the Plan expressly excludes "any Individual Investor-Specific Claims." (*See* RJN, ex. 2, Plan at 72 of 135:14-16.) "Individual Investor-Specific Claims" are defined as follows:

> Investors retain the right to independently pursue any claims against third parties where they have independent legal standing, and where such claims are **not** owned by the iCap Trust under this Plan, specifically claims owned by the iCap Trust and defined in the Plan as Causes of Action and Avoidance Actions ("**Individual Investor-Specific Claims**"). Examples of such claims include, but are not limited to: loss of lien or lien priority; claims against the investor's own professional advisors; claims against retirement service providers; and other claims arising from an investor's specific situation. For the avoidance of doubt, Individual Investor-Specific Claims do not encompass claims shared by all Investors or claims to recover commissions or referral fees paid by the Debtors to third parties in relation to an Investor's investment with the Debtors. The Plan will not interfere with an Investor's right to pursue these Individual Investor-Specific Claims, except as required (as determined by the iCap Trustees) to preserve iCap Trust Assets.

(*See* RJN, Ex. 2 at 95 of 135.) The Plan expressly identifies "claims arising from an investor's specific situation" as an example of an "Individual Investor Specific

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 17

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

Claim" and "claims shared by all Investors" as an example of a claim that is *not* an "Individual Investor Specific Claim." (*See id.*)

The Counter-Defendants and the Trustees agree that Individual Investor-Specific Claims are claims that (1) the investors have "independent legal standing" to pursue and (2) that "are not owned by the iCap Trust under the Plan. . . ." (*See* Opp'n. at 23:11-14.) The resolution of this issue turns on one issue—whether the aiding and abetting and unjust enrichment claims are, as argued by the Trustees, not "unique to" the individual investors and, instead, "are shared by all Investors." (*See* Opp'n. at 24:5-9.)[8] The Trustees' position that the Investor Claims are not unique to the investors is not correct.

There is no question that the investors have "independent legal standing" to pursue aiding and abetting and unjust enrichment claims. The Amended Complaint is premised entirely on the fact that these claims belong to the particular investors who have assigned them and that such claims are being pursued on their particular behalf. (*See* Ad. Compl. at 2:11-12; 3:21.) Moreover, as reflected by *Consolidated Meridian Funds* (upon which the Trustees heavily rely), the investors' claims arising from an alleged Ponzi scheme are "particularized as to them" and the investors have the *exclusive* right to pursue such claims. *See In re Consolidated Meridian Funds*, 485 B.R. 604, 612 (Bankr. W.D. Wash. 2013) ("In the case of a *Ponzi* scheme, investors have a claim that is particularized as to them and they have exclusive right to pursue claims.") (emphasis added); *see also Koch Refining v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1348-49 (7th Cir. 1987) ("A

---

[8] *See* Disclosure Statement, Docket No. 1248, at 66 of 209:9-11 (reiterating that the Individual Investor-Specific Claims are unique to investors by providing that "Nothing in the Plan will impair the rights of Investors to independently pursue claims in which they have independent legal standing against third parties that are unique to such Investors ('Individual Investor-Specific Claims').").

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 18

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

cause of action is 'personal' if the claimant himself is harmed . . . If the liability is to all creditors of the corporation . . . it is a general claim."); *Ritchie Capital Management, L.L.C. v. General Elec. Capital Corp.*, 821 F.3d 349, 350 & 351 (2d Cir. 2016) (upholding dismissal of claims, including aiding and abetting fraud claims against a lender, by an investor for lack of standing because the investor failed to allege "a particularized injury.").  Indeed, both aiding and abetting and unjust enrichment claims require a particularized injury by a particular plaintiff as a necessary element of those claims.  *See, e.g., Facebook, Inc.*, *v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011) (for aiding and abetting, "[s]ubstantial assistance requires that the defendant's actions be a 'substantial factor in causing the plaintiff's injury."); *Engelhart v. Strong,* 25 Wash. App. 2d 1017, *9 (providing that unjust enrichment claims require that the defendant received a benefit "at the plaintiff's expense").

The Trustees provide no support for their conclusive position that the aiding and abetting and unjust enrichment claims purportedly assigned by certain investors to the iCap Trust are not unique to such investors.  (*See* Opp'n. at 24:7-9.)  As demonstrated above, each investor has a unique claim for the alleged particularized damage *to such investor*.  In fact, unless the aiding and abetting and unjust enrichment claims were unique and belonged to the Assigning Investors, the Assigning Investors *would have no claims to assign to the iCap Trust.*

The investors' claims for aiding and abetting and unjust enrichment are claims that the investors have independent standing to pursue and that are not owned by the iCap Trust as Causes of Action or Avoidance Actions.  As argued by the Trustees, the iCap Trust has the right to pursue "iCap Trust Actions." (*See* Opp'n. at 22:9-12.)  The Plan defines iCap Trust Actions to be "all Avoidance

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 19

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

Actions and Causes of Action held by the Debtors or the Estates and any Causes of Action that are contributed to the iCap Trust as Contributed Claims. . . ." (*See* RJN, Ex. 2 at 77 of 135, ¶ 62.) However, neither "Avoidance Actions" nor "Causes of Action that are contributed to the iCap Trust as Contributed Claims" vest the Trustees with the investors' claims for aiding and abetting and unjust enrichment. The alleged non-estate Causes of Action included in the iCap Trust Actions are limited to Causes of Action that are Contributed Claims. As explained above, "Contributed Claims" excludes "Individual Investor-Specific Claims" (claims that investors have independent legal standing to pursue). Moreover, the Plan's definition of Avoidance Actions is limited to those "that may be brought by or on behalf of the Debtors or the Estates. . . ." (*See* RJN, Ex. 2 at 69 of 135, ¶ 4.) Thus, in short, the iCap Trust owns claims of the Estates and the Contributed Claims. As discussed above, the Contributed Claims, by definition, excludes Individual Investor-Specific Claims. Any Individual Investor-Specific Claims are not owned by the iCap Trust.

Contrary to the Trustees' arguments, the Counter-Defendants' position is not contrary to the express terms of the Plan; rather, it *enforces* such express terms. To avoid the express terms of the Plan, the Trustees advance a series of irrelevant arguments.

The Trustees' argument that the Counter-Defendants' position is contrary to the "very purpose" of the Plan is irrelevant. The Plan could have plainly and expressly stated that the Investor Claims (*i.e.,* claims for aiding and abetting and unjust enrichment belonging to the investors) were specifically included in the iCap Trust. For whatever reason, it did not. Besides, whatever the alleged purpose of the Plan, its express terms exclude from the iCap Trust the Individual Investor-

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 20

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

Specific Claims that the Trustees now assert. The Plan's examples of Individual Investor-Specific Claims reiterate this. The Plan specifically identifies "claims arising from an investor's specific situation" as an example of an Individual Investor-Specific Claim. (*See* RJN, Ex. 2 at 72 of 135:12-13.) The illustrative categories of claims that were allegedly preserved by the Plan are not controlling and do not override the more-specific and express definition of the Individual Investor-Specific Claims. Moreover, Article V.F.3. of the Plan, which the Trustees quote, relates to claims belonging to the Debtors and the Estates. (*See* RJN, Ex. 2 at 110 of 135, Art. V.F.3., stating " The Plan specifically preserves the right for the iCap Trust and iCap Trustees to pursue any and all claims that the Debtors and/or their Estates have the right to pursue, including **all** Causes of Action and Avoidance Actions." (emphasis in original).).[9]

        The Trustees' argument that the Counter-Defendants' position, if accepted, will leave the investors "high and dry and without their day in court or the possibility of recovery on account of *their* over $230 million in claims" is false (in addition to being irrelevant). As expressly provided in the Plan, the Contributed Claims that the Trustees assert in the Amended Complaint remain with the investors to pursue. The investors may have their day in court (should they so choose to pursue it). The Trustees are simply not the parties with standing and authority to pursue the Investor Claims.

---

[9] Any aiding and abetting and unjust enrichment claims of the Debtors and the Estates are barred by *Williams* and *in pari delicto*. The Trustees' argument that the claims were "preserved" is inconsistent with their position that their standing is derived from the Plan.

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

## C. The Trustees Are Required to Specifically Identify the Assigning Investors

The Trustees lack standing because of their failure to specifically identify the investors whose claims they are purporting to pursue. Claims purporting to vindicate unnamed "assignors" lack standing. *See Brown v. Bank of Am., N.A.,* 660 F. App'x 506, 509 (9th Cir. 2016) (affirming dismissal of complaint when plaintiff pled he was "the assignee of the claims" listed in an exhibit but did not provide assignment agreements); *see also MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.,* 2023 WL 5725517, at *8 (N.D. Cal. 2023) ("To prove Plaintiffs are real parties in interest here, the Court needs to know which shoes Plaintiffs claim to occupy. Thus, claims purporting to vindicate unnamed 'assignors' rights lack standing here.").

Moreover, as discussed in more detail below, without identifying the Assigning Investors and the alleged particulars of the assigned Investor Claims being pursued, the Trustees cannot state claims for relief. For example, in *Consolidated Meridian Funds*, the bankruptcy court stated the following in dismissing the plaintiff's aiding and abetting claims:

> The Complaint does not allege when the Investor Plaintiffs made their investments or whether the investments were made before or after the bank is alleged to have known of Berg's fraud. If the investments were made before the Commerce Bank accounts were established, the Complaint fails to allege how any action or nonaction on the part of Commerce Bank proximately caused damage to the Investor Plaintiffs.

*See In re Consol. Meridian Funds*, 485 B.R. 605, 625 (Bankr. W.D. Wash. 2013).

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 22

BORDE LAW PLLC
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

**D.** **The Trustees Failed to Adequately Plead Aiding and Abetting Claims**

**1.** **No Actual Knowledge of the Alleged Ponzi Scheme**

The Trustees have failed to allege sufficient facts to establish that the Movants had the requisite actual knowledge of the alleged Ponzi scheme. The Trustees assertion that "a mere declaratory statement that the defendant had knowledge is all that is required" is not accurate. The Trustees' position is not accurate based on the cases that they cite. In pleading actual knowledge, the Trustees are required to allege sufficient facts to "satisfy the pleading requirements set forth in *Twombly* and *Iqbal*." *See In re Consolidated Meridian Funds*, 485 B.R. 604, 616-17 (Bankr. W.D. Wash. 2013) ("[H]owever, pleading actual knowledge is still subject to the requirement that a plaintiff must state 'factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged.'"); *see also Chang v. Wells Fargo Bank, N.A.*, 2020 WL 1694360, at *4 (N.D. Cal. 2020) ("If a plaintiff directly alleges actual knowledge, the next question is whether the complaint pleads sufficient facts to make that allegation plausible as required by *Twombly*."). In *Chang*, the district court also noted the importance of strictly applying the pleading requirements and carefully vetting and scrutinizing aiding and abetting claims to determine that the defendant "had actual knowledge of the underlying wrong it purportedly aided and abetted." *See Chang*, 2020 WL 1694360, at *3 (discussing California law). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

The Trustees are required to allege facts from which the court can reasonably infer that the Counter-Defendants had *actual knowledge* that the Debtors were operating a Ponzi scheme. "[T]he allegation must be that the defendant had actual

knowledge of the primary violation . . . . Actual knowledge necessarily requires a defendant to reach a conscious decision *to participate in tortious activity for the purpose of assisting another in performing a wrongful act*." *In re Consol. Meridian Funds*, 485 B.R. 604, 617 (Bankr. W.D. Wash. 2013) (emphasis added); *see also Casey v. U.S. Bank. of California, N.A.,* 290 F. Supp. 2d 1101, 1108 (C.D. Cal. 2003) ("Of course, a defendant can only aid and abet another's tort if the defendant knows what 'that tort' is.") "[T]he actual knowledge standard does require more than a vague suspicion of wrongdoing." *In re First Alliance Mortg. Co.,* 471 F.3d 977, 993 n.4 (9th Cir. 2006). "The overwhelming weight of authority holds that actual knowledge is required, rather than a lower standard such as recklessness or willful blindness." *Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 202, n. 279 (S.D.N.Y. 2006).

The Trustees' aiding and abetting claims are defeated by their own allegations. The Trustees' allegation that *had* Lima inquired about the use of the 2022 Bridge Loan proceeds, it "would have *revealed* that the Debtors were being operated a Ponzi scheme," taken as true, shows that the Trustees have no aiding and abetting claims. (*See* Ad. Compl. at 10:9-12) (emphasis added.) Under the Trustees' allegations, prior to 2022, Lima did not have knowledge of an alleged Ponzi scheme. The Trustees have not identified a single alleged fact in the Amended Complaint to support the argument that Lima had actual knowledge prior to the 2022 Bridge Loans. (*See* Opp'n. at 29:13 to 31:13.) The Amended Complaint does not allege any reason for Lima to even be suspicious of the Debtors' operations prior to the 2022 Bridge Loans, *i.e.,* the iCap Investments Refinance Loans and the BU 1121 Refinance and Rehab Loan (even if alleged, such suspicion would not be enough). If due diligence in 2022 would have

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 24

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

24-80022-WLH    Doc 44    Filed 10/01/25    Entered 10/01/25 20:55:47    Pg 31 of 59

"revealed" the Ponzi scheme, then, according to the Trustees, Lima did not have knowledge of the Ponzi scheme prior to that time. Moreover, based on the Trustees' allegation that Lima did not complete the due diligence in 2022 that would have revealed the Debtor's alleged Ponzi scheme, Lima never acquired the actual knowledge that such Ponzi scheme is occurring at any point in time. *See Soo Line R. Co. v. St. Louis Southwestern Ry. Co.,* 125 F.3d 481, 483 (7th Cir. 1997) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim. . . .")

The Trustees have not alleged facts supporting the inference that the Counter-Defendants knew that the Debtors were operating as a Ponzi scheme and refused to confirm it. Rather, the Trustees' have alleged that the Debtors failed to conduct the investigation or due diligence that would have supplied the actual knowledge required for aiding and abetting. Even if such alleged failure occurred in the face of "suspicious circumstances" in 2022 (*see* Opp'n. at 29-18-20), the Trustees have *still* not alleged facts demonstrating that the Counter-Defendants had actual knowledge as required.

The Trustees' failure to adequately plead that the Counter-Defendants had actual knowledge of the Debtors' alleged Ponzi scheme is also reiterated by the portions of the Amended Complaint that the Trustees rely on in the Opposition. (*See* Opp'n. at 30:1-23.) These allegations do not come close to alleging actual knowledge of *a Ponzi scheme*. Nor do they constitute a vague suspicion of wrongdoing, which is not enough. *See In re First Alliance Mortg. Co.,* 471 F.3d at 993 n.4. The facts alleged, even if true, establish that Lima was informed that the Debtor Borrowers of the 2022 Bridge Loans needed the loans "to help with cash flow" and that the underlying real property collateral was not subject to

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 25

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

mortgage debt. (*See* Opp'n. 30:10-19.) These two noncontroversial facts do not give rise to a plausible inference that Lima actually knew that the Debtors were operating as a fraudulent Ponzi scheme, nor does the alleged fact that the 2022 Bridge Loans would be paid by investments. (*See id.* at 30:18-19.) While the Trustees allege that the proceeds from the 2022 Bridge Loans were transferred to the parent of the Debtor Borrowers of the 2022 Bridge Loans and then to an investor, the Trustees do not allege a single fact supporting the inference that Lima had any knowledge that would occur. Rather, the Trustees' argue that these facts amount to "suspicious activity[.]" (*See* Ad. Compl. at 10:10.) Again, the Trustees' argument is not that the Counter-Defendants had actual knowledge that the Debtors were operating a Ponzi scheme, but instead, that the Counter-Defendants failed to conduct the investigation that would have revealed it. (*See* Opp'n. at 31:1-4; *see also* Ad. Complaint at 10, ¶ 32, stating that Lima "did not conduct adequate due diligence . . . that would have revealed that the Debtors were being operated as a Ponzi scheme. . . . .") This is not enough.

The Trustees' allegations related to the 2022 Bridge Loans, even if true, are insufficient for multiple reasons. First, they amount to *constructive knowledge*, and not actual knowledge. Second, they amount to constructive knowledge of something other than the primary wrong, the Ponzi scheme. Third, the statement that "we [] need help with cash flow" does not create a reasonable inference that funds would be used by other Debtors (which, even if it did, would be insufficient). None of these allegations equate to actual knowledge of a Ponzi scheme: "(1) the funneling of money from new investors to pay old investors, and (2) no legitimate profit-making business opportunity exists for investors." *See In re EPD Inv. Co., LLC,* 114 F.4th 1148, 1159 (9th Cir. 2024).

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 26

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

The Trustees' argument that Lima knew the 2022 Bridge Loan proceeds were being used contrary to their stated purpose is contrary to the facts alleged in the Amended Complaint. (*See* Opp'n. at 35:21-22.) The Trustees' allege that the 2022 Bridge Loans could be used only for the "purchase or renovation" of the properties owned by the borrowers. (*See* Ad. Compl. at 10, ¶ 31.) The Trustees do not allege why this was the case. While the Trustees allege Lima knew this statement was false, the Trustees do not allege how Lima knew it was false. (*See id.*) The loans prior to the 2022 Bridge Loans were used for ordinary business debt and expenses. Moreover, *even if* Lima knew that the 2022 Bridge Loan proceeds would be used from some purpose other than the purchase or renovation of the subject real properties, it does not lead to the inference that Lima actually knew the Debtors were operating as a Ponzi scheme. As stated above, the Trustees also allege that Lima was informed that the proceeds were to be used for "cash flow" (*i.e.*, a normal business purpose).

The inadequacy of the Trustees' allegations is supported by the *Consolidated Meridian Funds* case that the Trustees rely on. In that case, a claim for aiding and abetting was asserted against a bank where the debtors who operated an alleged Ponzi scheme maintained accounts that held investor funds on deposit and where the perpetrator maintained accounts. *See* 485 B.R. at 620. Despite allegations that investor funds were being transferred in and out of the entity and personal accounts and that investor funds were used by the perpetrator for personal use, the court determined that the complaint failed to adequately plead actual knowledge. *See id.* at 621 and 624-25. Thus, allegations of actual knowledge (a bank seeing how funds were transferred and used) that funds were being used by someone other than their

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 27

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

intended recipient does not create a reasonable inference of actual knowledge of a Ponzi scheme.

The Trustees' argument that they are not required to plead the who, what, where, when and how of actual knowledge is directly contradicted by *Consolidated Meridian Funds*. (*See* Opp'n. at 28:18-29:13.) In *Consolidated Meridian Funds*, the court determined that the complaint in that case did not adequately plead actual knowledge as follows:

> Like the complaint in *Lerner,* the Complaint here includes only a conclusory allegation that Commerce Bank knew that Berg was operating a Ponzi scheme, without alleging any specific facts which would put the bank on notice as to **what, when** and **how** it is alleged to have known. In the plea, Berg admitted that the Ponzi scheme commenced 'sometime within the last ten years.' The Complaint does not allege at what point in time Commerce Bank is alleged to have known of the scheme, or what misrepresentations by Berg the bank is alleged to have discovered. The Complaint does not allege when the Investor Plaintiffs made their investments or whether the investments were made before or after the bank is alleged to have known of Berg's fraud. If the investments were made before the Commerce Bank accounts were established, the Complaint fails to allege how any action or nonaction on the part of Commerce Bank proximately caused damage to the Investor Plaintiffs. The Court therefore concludes that the Trustee has failed to sufficiently plead the knowledge element of aiding and abetting.

485 B.R. at 625 (emphasis added.).[10]

---

[10] While the court stated that actual knowledge may be averred generally, the court also stated that the plaintiff must state factual content to allow the court to draw the reasonable inference that the defendant had actual knowledge of the primary violation, including specific facts of the

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 28

BORDE LAW PLLC
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

Like the complaint in *Consolidated Meridian Fund*, the Amended Complaint does not allege any specific facts that put the Counter-Defendants on notice as to what, when and how it is alleged to have known of the alleged Ponzi scheme. The Amended Complaint does not allege, among other things, (i) what made the Counter-Defendants learn of a Ponzi scheme; (ii) when they learned of a Ponzi scheme; (iii) how exactly Counter-Defendants learned of a Ponzi scheme; and (iv) who at the Counter-Defendants learned of a Ponzi scheme. The conclusory allegation that "Counter-Defendants knew, were deliberately ignorant of, or willfully blind about the Ponzi scheme" (*see* Ad. Compl. at ¶ 48) is insufficient under both *Consolidated Meridian Funds* and *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Simply put, the Amended Complaint provides no factual basis to support that the Counter-Defendants had actual knowledge of the alleged Ponzi scheme.

The Opposition's conscious avoidance argument, based on *Consolidated Meridian Funds,* fails for multiple reasons. (*See* 29:13-31:13.) First, *Consolidated Meridian Funds* did not specifically adopt a conscious avoidance standard. Rather, the court merely noted that it was the "Trustee's asserted standard." *See id.* at 617. Second, in *Consolidated Meridian Funds*, the trustee's conscious avoidance standard was based on a decision that did not discuss "conscious avoidance." *See id.* (citing *Smith v. First Union Nat. Bank*, 2002 WL 31056104, at *2 (S.D. Fla. 2002)). Rather, *Smith* required "actual awareness of the party's role in the fraudulent scheme." *See id.* at *3 (quotation omitted). Third, as articulated by the court in *Consolidated Meridian Fund*, the conscious avoidance theory, assuming that standard applies, still requires that the Trustees plead factual allegations that

---

what, when and how, as discussed above. *See In re Consol. Meridian Funds,* 485 B.R. 604, 616 and 625 (Bankr. W.D. Wash. 2013)._

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

the Counter-Defendants "essentially knew" that the Debtors were engaged in a Ponzi scheme. *See id.* The Amended Complaint does not contain such allegations. The allegations that the Opposition identifies in support of its conscious avoidance argument—the unsupported conclusory allegation that Lima was "put on notice" (*see* Opp'n. at 30:20-21) that its funds would be used by other entities (assuming the actual facts alleged in the Amended Complaint support that Lima was on such notice)—does not come close to rising to the level of "essentially knowing" that the Debtors were a Ponzi scheme. As discussed above, this type of argument was rejected by the court in *Consolidated Meridian Funds*.

## 2. No Substantial Assistance

The Opposition reaffirms that the Trustees have not pled substantial assistance with the particularity required by Rule 9(b). *See, e.g., In re Consol. Meridian Funds*, 485 B.R. at 617 (Bankr. W.D. Wash. 2013) (concluding that substantial assistance must satisfy Rule 9(b)); *Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017) (applying Rule 9(b) to aiding and abetting claim); *Neilson*, 290 F. Supp. 2d 1101, 1132 (C.D. Cal. 2003) (applying Rule 9(b) to substantial assistance). The Opposition acknowledges that Rule 9(b) applies, quoting *Consolidated Meridian Funds* as follows: "'[t]o comply with Rule 9(b), allegations of fraud [or substantial assistance] must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.' *See Consolidated Meridian*, 485 B.R. at 665-66 n.7." (Opp'n. at 7:10-13.)[11]

---

[11] The Trustees' position elsewhere in the Opposition that "the heightened pleading standard under Rule 9 is not applicable to the Trustees' claims" (*see* Opp'n. at 8:3-4) is contradicted by its *Consol. Meridian Funds* quote and not supported by identifying any cases that rejected the application of Rule 9(b) to substantial assistance.

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 30

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

To plead this element, the Trustees must specifically allege facts establishing "'a *significant* and *active*, as well as a *knowing* participation in the wrong.'" *Chang v. Wells Fargo Bank, N.A.,* 2020 WL 1694360, at *6 (N.D. Cal. Apr. 7, 2020) (emphasis added) (quoting *In re Mortgage Fund '08 LLC,* 527 B.R. 351, 365 (N.D. Cal. 2015). The Opposition does not dispute this standard or provide an alternative one.

The Amended Complaint does not allege any facts to support a significant, active, and knowing participation in a Ponzi scheme by the Counter-Defendants. The Amended Complaint alleges that the iCap Investments Refinance Loans and the BU 1121 Refinance and Rehab Loans were used for ordinary business purposes. (*See* Ad. Compl. at ¶¶ 17 and 21.) The Amended Complaint does not, in any way, allege facts to demonstrate that these loans in 2020 and 2021 amount to a significant, active, and knowing participation in the alleged Ponzi scheme. Moreover, the Amended Complaint does not contain any allegations regarding the Counter-Defendants' knowledge of any matter whatsoever bin 2020 and 2021 and the Opposition does not cite to any such allegations of such knowledge.

The Trustees' argument that the iCap Investments Refinance Loans in 2020 "helped prop up the scheme" and the BU 1121 Refinance and Rehab Loan in 2021 "stabilize[d] the constant burden of debt service and to preserve asset value while the principles searched for new 'victims'" is false. (*See* Opp'n. at 33:9; *id.* at 34:2-4; *id.* at 10-12.) These arguments are not supported by and are contrary to the more specific allegations in the Amended Complaint. According to the Amended Complaint, these loans were used for ordinary business purposes. Moreover, without the Trustees' added color, the Trustees' argument amounts to nothing more than the statement that the loans by Lima in 2020 and 2021 paid ordinary business

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

debt and expenses. "[T]he routine extension of a loan does not amount to substantial assistance." *Bane v. Sigmundr Expl. Corp.*, 848 F.2d 579, 582 (5th Cir. 1988). And, again, the Trustees have not alleged any fact that the Counter-Defendants had actual knowledge at this time.

The Amended Complaint's allegations concerning the 2022 Bridge Loans do not support a significant, active, and knowing participation in a Ponzi scheme by the Counter-Defendants. For an ordinary business transaction to satisfy substantial assistance, the lender must "actually kn[o]w those transactions were assisting the customer in committing a specific tort [i.e., a Ponzi scheme]. Knowledge is the crucial element." *See In re First All. Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006). Stated another way, the act must be made "with the intent of facilitating the commission of" the alleged Ponzi scheme. *See Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1146 (2005). The Amended Complaint fails to allege facts to support that the Counter-Defendants knew that the loan proceeds from the 2022 Bridge Loans would be used to facilitate a Ponzi scheme and would be distributed as alleged by the Trustees. The Opposition's statement that the Amended Complaint alleges that "these Lima loans [to iCap Investments] helped prop up the scheme" and the loan to BU 1121 "stabilize[d] the constant burden of debt service and to preserve asset value while the principles searched for new 'victims'" is false. (*See* Opp'n. at 33:9; *id.* at 34:2-4; *id.* at 10-12.) These allegations are not in the Amended Complaint and are contrary to the Amended Complaint's more specific allegations of these loans being used for ordinary business purposes.

The Opposition does not address how these loans constituted a significant, active, and knowing participation in a Ponzi scheme by the Counter-Defendants. Instead, the Trustees assert one argument that demonstrates the insufficiency of

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 32

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

their allegations. The Trustees' sole argument that they sufficiently pled substantial assistance is based on their purported allegations that Lima's loans "were a departure from the Counter-Defendants' typical lending process." (*See* Opp'n. at 31:15-8.) This argument should be overruled for multiple reasons.

First, the argument is simply false. The Amended Complaint does not contain any allegations regarding the *Counter-Defendants'* typical lending process or how the Counter-Defendants departed from that process. The Amended Complaint does not even allege that Wilmington is a lender (it's not) or that it made any loans. The Opposition cites to paragraphs 16-22 of the Amended Complaint, which discuss the *Companys'* (*i.e.*, the Debtors') use of the Lima loan proceeds, not the Counter-Defendants' typical lending process. (*See* Opp'n. at 32:21-24.)

Second, the portions of the substantial assistance cases relied on by the Trustees address atypical banking procedures. A bank's knowledge of a Ponzi scheme that the bank provides account services to is materially different from a lender who does not provide account services, and illustrates why the Trustees' allegations fall short.

In *Chang*, the bank was alleged to process "all the transactions" of the Ponzi scheme. *See Chang v. Wells Fargo Bank, N.A.,* 2020 WL 1694360, at *1 (N.D. Cal. 2020) The plaintiff specifically alleged that the bank held accounts that received investor money, commingled investor money, divested and misdirected a "significant portion" of the investors' money to the Ponzi perpetrators' personal accounts, and permitted the Ponzi scheme to use investor money for Ponzi payments to earlier investors. *See id.* at *6. Unlike the complaint in *Chang*, the Amended Complaint does not allege that the Counter-Defendants provided the accounts that: (a) processed "all the transactions" of the Debtors' alleged Ponzi

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 33

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

scheme, (b) commingled investor money, (c) divested and misdirected a "significant portion" of the investors' money to the Ponzi perpetrators' personal accounts, and (d) permitted the Ponzi scheme to use investor money for Ponzi payments to earlier investors. Unlike a bank that can see every transfer of funds to and from a Ponzi scheme, the Counter-Defendants did not have this visibility. The *Chang* case is nothing like the case before this court and demonstrates how deficient the Trustees' claims against the Counter-Defendants are.

### 3. No Proximate Cause of Any Damages to Investors

The Opposition completely ignores and fails to address the Trustees' failure to plead proximate cause with the particularity required by Rule 9(b).

Establishing substantial assistance "requires the plaintiff to show that the secondary party proximately caused the violation, or, in other words, that the encouragement or assistance was a substantial factor in causing the tort." *See K & S P'ship v. Cont'l Bank, N.A.*, 952 F.2d 971, 979 (8th Cir. 1991); *see also Facebook, Inc., v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011) ("Substantial assistance requires that the defendant's actions be a 'substantial factor in causing the plaintiff's injury."). In *Consolidated Meridian Funds*, the bankruptcy court determined that the trustee's aiding and abetting claims were not adequately pled and granted the bank's motion to dismiss those claims where the complaint did not identify when the investors made their investments and how their loss was proximately caused by the bank. *See In re Consol. Meridian Funds*, 485 B.R. at 625 (Bankr. W.D. Wash. 2013). The Opposition does not dispute that proximate causation must be pled with particularity.

The Amended Complaint fails to plead the most basic information concerning proximate cause. The Amended Complaint does not even identify the

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 34

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

Assigning Investors whose claims are purportedly being asserted.  *See also MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*, 2023 WL 5725517, at *8 (N.D. Cal. 2023) ("To prove Plaintiffs are real parties in interest here, the Court need to know which shoes Plaintiffs claim to occupy.  Thus, claims purporting to vindicate unnamed 'assignors' rights lack standing here.")  Without alleging the identities of the Assigning Investors, the Counter-Defendants cannot defend the claims.  "To comply with Rule 9(b), allegations of fraud or substantial assistance must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'"  *In re Consol. Meridian Funds*, 485 B.R. at 625, n.7 (brackets omitted) quoting *Bly-Magee v. State of California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

The Amended Complaint also fails to identify when the Assigning Investors made their investments and allege how their loss was proximately caused by Lima to the particular Assigning Investors.  Without identifying and alleging such particulars, the Trustees cannot plead sufficient facts to establish proximate cause.  *See In re Consol. Meridian Funds,* 485 B.R. at 625 ("If the investments were made before the Commerce Bank accounts were established, the Complaint fails to allege how any action or nonaction on the part of Commerce Bank proximately caused damage to the Investor Plaintiffs.");  s*ee also Chang v. Wells Fargo Bank, N.A.,* 2020 WL 1694360, at *6 ("a plaintiff must [also] allege that the defendant's conduct was a substantial factor *in bringing about the injury allegedly suffered by the plaintiff*." (quotations omitted and emphasis added)).  As discussed above, this failure deprives the Trustees of standing.  *See Brown v. Bank of Am., N.A.,* 660 F. App'x 506, 509 (9th Cir. 2016) (affirming dismissal of complaint when plaintiff

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

pled he was "the assignee of the claims" listed in an exhibit but did not provide assignment agreements); *MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.,* 2023 WL 5725517, at *8 (N.D. Cal. 2023) ("To prove Plaintiffs are real parties in interest here, the Court needs to know which shoes Plaintiffs claim to occupy. Thus, claims purporting to vindicate unnamed 'assignors' rights lack standing here.")

## VI. THE UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED

For the reasons explained in the Motion and above, the unjust enrichment claims must be dismissed for two threshold reasons: (1) under *Williams*, the Trustees lack standing to pursue the unjust enrichment claims of third parties; and (2) due to the Plan's terms, any investor-specific unjust enrichment claims were expressly *excluded* from the claims vested in the iCap Trust. Such claims remain with the investors to pursue.

The unjust enrichment claims should also be dismissed because they are not adequately pled. The Opposition does not dispute that the Trustees are required to plead (1) that a benefit was conferred upon the Counter-Defendants; (2) that the Counter-Defendants received the benefit at the particular investors' expense; and (3) that circumstances make it unjust for the Counter-Defendants to retain the benefit without payment. *See Engelhart v. Strong,* 25 Wash. App. 2d 1017, *9 (2023). The mere fact that a defendant has benefitted from the plaintiff does not justify recovery. *See Norcon Builders LLC v. GMP Homs VG LLC,* 161 Wn. App. 474, 490 (2011).

The Trustees do not dispute that the repayment of a secured loan does not support a claim for unjust enrichment. *See SMP Sales Management, Inc. v. Fleet*

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 36

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

*Credit Corp.,* 960 F.2d 557, 560 (5th Cir. 1992) (affirming district court's holding that secured creditor was not unjustly enriched relative to unsecured creditor by repayments on loan). There is nothing inequitable about receiving payments on secured loans after the estates received the benefit of the loan proceeds, including to refinance existing secured debt and other operating costs. Such payments were not of assets that would otherwise be available to creditors and instead resulted in a dollar-for-dollar reduction of Lima's secured debt and a release of the liens that secured Lima's loans against the underlying real estate collateral. The Opposition does not explain, with law or otherwise, how repayments on secured loans constitute unjust enrichment.

The Amended Complaint does not plead any non-conclusory facts to support the unjust enrichment claims. The Amended Complaint does not identify (i) the Assigning Investors whose unjust enrichment claims are being asserted; (ii) the benefit that the Counter-Defendants received at the expense of the particular unidentified investors; and (iii) why the receipt of that benefit is unjust. The Opposition does not identify where these allegations appear in the Amended Complaint.

The Opposition's citations to the Amended Complaint do not support the propositions asserted in the Opposition. Paragraphs 16-21 of the Amended Complaint do not allege that the Counter-Defendants received repayments of loans from funds arising from the disposition of collateral to fund false returns to investors or funds "directly" from investors' funds. (*See* Opp'n. at 49:2-4.) The Amended Complaint and the Kinrich Report do not allege that the Counter-Defendants received funds at the expense of any particular investors. That the Counter-Defendants "would have" received funds is insufficient. Nor does the

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 37

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

Kinrich Report allege any involvement by the Counter-Defendants in a Ponzi scheme. Moreover, the conclusory allegation that "it is manifestly unjust for the Counter-Defendants to have received and retained the fruits of the scheme" is not entitled to an assumption of truth. (*See* Opp'n. at 49:9-10.); s*ee Iqbal*, 556 U.S. at 679. Again, the Amended Complaint fails to allege any specific facts demonstrating that the Counter-Defendants received a benefit at the expense of any particular investors and that it would be unjust for the Counter-Defendants to retain such benefit.

## VII. THE FRAUDULENT TRANSFER CLAIMS MUST BE DISMISSED

### A. The Fraudulent Transfer Claims Lack the Requisite Particularity

The Opposition demonstrates that the Trustees have not adequately pled their fraudulent transfer claims. Like the Amended Complaint, the Opposition does not specifically state or identify the transfers that the Trustees seek to avoid. Even with the Opposition, the Counter-Defendants are left to guess which transfers the Trustees seek to avoid. As such, the Amended Complaint does not adequately plead its fraudulent transfer claims.

### B. The Trustees Lack Standing to Bring State Law Fraudulent Transfer Claims

The Ninth Circuit has held that the existence of a § 544(b) claim requires that a creditor exist at the time the alleged fraudulent transfer was made and that the creditor have an actionable claim as of the petition date. *See In re JTS Corp.*, 617 F.3d 1102, 1113 (9th Cir. 2010) citing *In re Acequia*, 34 F.3d 800 (9th Cir. 1994); *see id.* at 807 ("[T]he existence of a section 544(b) cause of action depends

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 38

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

upon whether . . . a creditor existing at the time the transfers were made . . . still had a viable claim against [the] debtor *at the time the bankruptcy petition was filed*.") (quotations omitted) (emphasis in original.).

The Opposition admits that, at a minimum, the Trustees are required to plead the existence of an unsecured creditor who, as of the petition date, could have avoided whatever transfers the Trustees are seeking to avoid. (*See* Opp'n. at 4):11-13.) However, the Amended Complaint does not allege the existence of any such unsecured creditor and the Opposition does not identify any such allegation. The allegation that the Trustees rely on—the conclusory allegation that the Debtors operated as a Ponzi scheme—does not equate to the existence of an unsecured creditor who could have avoided whatever transfers the Trustees are seeking to avoid as of the petition date. In fact, as to VH 1121, according to its schedules, VH 1121 did not have any creditors other than Wilmington as of the petition date. (*See* Supp. RJN at Ex. 6.) VH 1121's schedules are a judicial admission that VH 1121 did not have any creditors as of the petition date. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (providing that judicial admissions "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact" and cannot be refuted.)

The Trustees are required to plead the identity of the unsecured creditor whose rights they are asserting. This is true as to each transfer they seek to avoid, including any transfers related to non-debtor BU 1121. Contrary to the Opposition's argument that the Counter-Defendants' case law, including *Neilson*, requires no more, the court in *Neilson* specifically required the complaint to identify the unsecured creditor. *See Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 3d 1101, 1148 (C.D. Cal. 2003) ("Accordingly, the court grants Imperial's

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

motion to dismiss Neilson's fraudulent transfer claim to the extent it relies on the existence of unidentified unsecured creditors who could avoid the transfers under state law in the absence of the bankruptcy proceeding.") *see also In re Parkinson Seed Farm, Inc.*, 640 B.R. 218, 250 (Bankr. D. Idaho 2022) (requiring actual pleading of the existence of an unsecured creditor and a showing that applicable state law grants that creditor the right to avoid the transfer); *In re All Terrain, LLC*, 625 B.R. 462, 481–82 (Bankr. D. Idaho 2020) (holding that, because the trustee did not provide the requisite pleading and proof of an unsecured creditor that existed at the time of the transfers in question, the trustee's § 544(b) cause of action, and necessarily his state law causes of action, must be denied).

**C.** **Ninth Circuit Law Precludes the Trustees' Fraudulent Transfer Claims**

**1.** **The Fraudulent Transfer Claims Must Be Dismissed Because the Trustees Seek to Avoid Only Payments on Secured Obligations**

Based on the Opposition, the Ninth Circuit's decision in *First Alliance* mandates the dismissal of the fraudulent transfer claims. The Trustees admit that, under *First Alliance*, payments on account of secured claims cannot be avoided. (*See* Opp'n. at 41:12-15.) The Trustees argue that here, however, they are challenging the validity of the underlying secured obligations. This is false. *Nowhere* in the Amended Complaint do the Trustees allege that any liens are avoidable. The word "lien" is absent from the Amended Complaint. In fact, according to the Amended Complaint, the Trustees are *not* seeking to avoid or challenge any liens or security interests or underlying obligations. By the

Amended Complaint, the Trustees are "recovering certain payments and avoiding transfers of interest made by the Debtors. . . ." (*See* Ad. Compl. at ¶ 3.)

Based on the Counter-Defendants' complaint, the validity of liens granted to Lima are only at issue with respect to liens securing the 2022 Bridge Loans and encumbering VH 1121 and VH Willows Collateral Proceeds in escrow. The Trustees' argument that they assert that the underlying "grant of lien rights" to Lima in connection with the earlier repaid loans are avoidable is being raised for the first time in the Opposition. The Trustees are raising this argument now because they are confronted with controlling Ninth Circuit law demonstrating that their fraudulent transfer claims lack merit and must be dismissed. ***The Opposition confirms this***. To support their argument that they are challenging Lima's liens, the Trustees cite and quote only the *Counter-Defendants' complaint,* which limits the disputes to Wilmington's liens securing the VH 1121 and VH Willows Collateral Proceeds. (*See* Opp'n. at 42, n. 24.) The Trustees' causes of action to avoid and recover the "Payments" and "Transfers" (which comprise the entirety of the first two Causes of Action in the Amended Complaint) must be dismissed pursuant to *First Alliance*.

### 2. The Trustees Should Not Be Granted Leave to Amend Again

Any request by the Trustees for leave to amend is futile for at least two reasons.

First, the Trustees' assertion that the loan obligations incurred by the Debtors in 2020 and 2021 are avoidable is contrary to the allegations in the Amended Complaint. As discussed in the Motion, based on the allegations in the Amended Complaint, Lima's loans in 2020 and 2021 were incurred for ordinary business

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 41

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

purposes and used for ordinary business purposes. The 2020 iCap Investments Refinance Loans were incurred to repay existing mortgage debt, repay the builder, and for operating costs. (*See* Ad. Compl. at 7, ¶ 17.) The 2021 BU 1211 Refinance and Rehab Loan was incurred to repay existing debt and complete the construction of the underlying collateral. (*See id.* at 8, ¶ 21.) In fact, the Trustees emphasize the ordinary course nature of the loans in 2020 and 2021 in the Amended Complaint in an attempt to bolster their claims with respect to the 2022 Bridge Loans. (*See id.* at 10, ¶ 33, stating that "[u]nlike Lima's earlier loans that were used to refinance existing mortgage debt. . . .").  Moreover, while the Trustees assert generally that the Debtors "used funds from lenders to ensure the Company's various related entities had enough funds to meet their interest and principal obligations to subscribers[,]" this general statement does not relate to Lima and the more specific allegations regarding Lima's loans in 2020 and 2021 are that such loans were admittedly *not used in this fashion*. (*See id.* at 6:16-7:2; *see also id.* at 7:5-13 and 7:21-8:3.) The Trustees have not and cannot allege facts to support a claim that the underlying loans by Lima underlying the Transfers and Payments at issue in the Amended Complaint can be avoided. The Trustees should not be permitted a further opportunity to amend to contradict the facts already plead in the Amended Complaint. "A proposed amended complaint is futile if . . . there is no reason to believe that 'the deficiencies can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint.'" *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 328 F. Supp. 3d 963, 983 (N.D. Cal. 2018) (citing *United States v. Corinthian Colleges,* 655 F.3d 984, 995 (9th Cir. 2011)) (internal quotation marks omitted). Moreover, it is entirely appropriate for the

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 42

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

24-80022-WLH    Doc 44    Filed 10/01/25    Entered 10/01/25 20:55:47    Pg 49 of 59

court to consider the factual allegations disproving the Trustees' claims in adjudicating the Motion. *See Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim. . . .")

The Trustees' assertion that Lima's loans were made during the time that the Debtors operated as a Ponzi scheme is not sufficient to avoid such loans, as made clear in *First Alliance*. (*See* Opp'n. at 44:5-9.) The Trustees assert that the Counter-Defendants' argument on this point is hard to understand. The Counter-Defendants point is this: under *First Alliance*, not every obligation incurred or transfer made by a debtor otherwise engaged in a fraudulent scheme and during that scheme is part of that scheme or is incurred or made with the requisite fraudulent intent for purposes of § 548. *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 1008-09 (9th Cir. 2006). The Trustees must allege facts supporting the inference that the specific obligations incurred and the repayments on those obligations made were incurred or made with the requisite intent to hide assets from creditors or to defraud creditors. *See id.* at 1009. The Trustees have not done so. While the Trustees now argue that Lima's loans "prolonged" the Debtors' Ponzi scheme, there are no facts to support that argument with respect to the Transfers and Payments the Trustees seek to avoid. Again, the allegations to which the Trustees cite to support this argument deal with solely with the 2022 Bridge Loans. (*See* Opp'n. at 42.) The allegations in the Amended Complaint are that the loans in 2020 and 2021 were used for *only* legitimate business purposes and did nothing more than pay ordinary course debt.

The Ponzi scheme presumption is of no help to the Trustees. In *EPD Investments Company*, the Ninth Circuit stated that "[i]f the trustee proves that the

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 43

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

debtor operated a Ponzi scheme, the trustee is entitled to the irrebuttable presumption that the debtor transferred money with the actual fraudulent intent under section 548." *In re EPD Investment Co., LLC*, 114 F.4th 1148, 1157 (9th Cir. 2024). However, the Ninth Circuit's statement addressed the transfer of *money* and, further, to a *winning investor* in the context of an alleged Ponzi scheme. *See id.* at 1157-58. The Ninth Circuit's holding does not control the facts here—a business loan incurred and repaid by the proceeds of the lender's collateral. Under *First Alliance,* just because a Debtor allegedly transferred funds to a winning investor with the actual intent to defraud does not mean that the Borrower Debtors incurred and/or repaid loans from Lima with the same intent. *See In re First Alliance Mortg. Co.*, 471 F.3d at 1008-09. In *First Alliance*, the Ninth Circuit makes clear that not every transfer made or obligation incurred by a debtor engaged in a fraudulent scheme is done with the same fraudulent intent. *See id.* at 1009.

The Trustees' argument that Lima's loans are tied to the Debtors' alleged Ponzi scheme because they provided "funds to allow the Debtors to operate" proves that the Trustees cannot state a claim to avoid Lima's loans. (*See* Opp'n. at 44:4-9.) That is, the Trustees' argument of the best case they can make *is still not enough.* The Trustees' argument reflects the shortcomings recognized by the Ninth Circuit in *First Alliance*. In *First Alliance*, Lehman's loans directly funded the debtor's fraudulent scheme in that case. *See In re First Alliance*, 471 F.3d at 987 (stating that "without Lehman's financing, First Alliance would not have been able to continue to funds its fraudulently obtained loans."). The debtors could not have operated or made the fraudulent loans to buyers without Lehman's credit line. Moreover, the debtor's business was indistinguishable from its "fraudulent enterprise[.]" *See id.* at 995. Yet, the Ninth Circuit held that the debtors did not

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 44

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

incur Lehman's loans or pay them with the necessary intent to defraud. *See id.* at 1008-09. Thus, even assuming the Trustees' argument that Lima's loans helped the Debtors operate is true (and is supported by the allegations actually in the Amended Complaint), it does not render the loans by Lima avoidable. Allegedly funding the Debtors' operations is not enough.

Nor do the factual allegations in the Amended Complaint support the Trustees' arguments. The Trustees have not alleged facts that Lima's loans prolonged or perpetuated the Debtors' Ponzi scheme. Rather, the Trustees alleged the uncontroversial facts that the Debtors incurred Lima's loans and that those loans were used to pay non-investor debt and improve real property. Anything in addition to such facts in the Opposition is merely argument by the Trustees that is unsupported by the facts in the Amended Complaint.

Second, allowing the Trustees to avoid the prior obligations would result in a windfall to the Estates.[12] As admitted by the trustees, the loans repaid debts and operating expenses. The Trustees are seeking the benefit of the loans from Lima without the obligation to repay those loans. As to the iCap Investments Refinance Loans and the BU 1121 Refinance and Rehab Loan (made to non-debtor BU 1121), the Trustees are seeking the net effect of Lima paying off the liens and debts benefitting the borrowers without receiving anything in return. This would be a windfall that is contrary to the Bankruptcy Code and fraudulent transfer law. *See In re LLS Am.*, 526 B.R. 841, 845 (E.D. Wash 2015).

---

[12] The Counter-Defendants reserve their arguments on the issue of whether the Trustees can avoid obligations that were already satisfied and liens that were already released as of the petition date (assuming they identify creditors who had the right to do so). For this proposition, the Trustees rely on the *Syntax-Brillian* decision. However, that court largely relied on Collier's on Bankruptcy, which, in turn, cited to nothing other than another treatise (and no decisional law) for the quoted proposition.

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

The unreported case cited by the Trustees, *Syntax-Brillian*, proves the deficiencies in the Amended Complaint. In that case, and unlike the Amended Complaint, the plaintiff's complaint contained a separate count to avoid the subject obligations. *See In re Syntax-Brillian Corp.*, 2016 WL 11165634 at *7 (Bankr. D. Del. 2016). In addition, the plaintiff alleged that the obligations incurred by the debtors were part of a scheme to "prop up" and "siphon money to" an entity controlled by insiders of the debtors, the natural consequence of which was to delay and hinder distributions to the creditor body. *See In re Syntax-Brillian Corp.*, 2016 WL 1165634 at *6 (Bankr. D. Del. 2016); *see also In re Syntax-Brillian Corp.*, 2011 WL 3101809 at *10 (Bankr. D. Del. 2011), *aff'd in part, vacated in part*, 573 F. App'x 154 (3d Cir. 2014). Thus, in *Syntax-Brillian*, the plaintiff alleged facts that the specific objections in question did more than help a debtor operate or occurred during a fraudulent scheme, but was incurred with the required intent to delay or hinder creditors.

In sum, the Trustees seeks to avoid Transfers and Payments on account of Lima's loans and *only* the alleged Transfers and Payments. Under *First Alliance*, the Trustees cannot avoid any Transfers and Payments on account of Lima's loans because they were in repayment of secured debt. The Trustees have not sought to avoid any obligations, liens or security interests, including with the respect to the 2022 Bridge Loans. The Trustees cannot amend the Amended Complaint in an attempt to assert claims to avoid the obligations underlying the Transfers and Payments without contradicting the facts already in the Amended Complaint. Such loan obligations were incurred and used for ordinary business purposes. Nor can the Trustees avoid loans that were already fully repaid. As such, the first two Causes of Action in the Amended Complaint, which relate only to Transfers and

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

Payments on account of the iCap Investments Refinance Loans and the BU 1121 Refinance and Rehab Loan must be dismissed in their entirety and with prejudice.

### D. The Actual Fraudulent Transfer Claims Are Not Adequately Pled

In response to the argument that the actual fraudulent transfer claims are not adequately pled, the Trustees rely solely on the Ponzi presumption. (*See* Opp'n. at 45:3-46:15.) In addition to failing to identify the transfers they seek to avoid and lacking standing, the Trustees' argument should be overruled for multiple reasons.

First, as discussed above, the statement by the Ninth Circuit in *EPD Investments Company* concerning the Ponzi presumption addressed the transfer of money to a winning investor in the context of an alleged Ponzi scheme. *See In re EPD Investment Co., LLC*, 114 F.4th at 1157-58 (9th Cir. 2024). *EPD Investments Company* does not control with respect to the incurrence or repayment of a secured loan. As discussed above, under *First Alliance,* the repayment of a secured debt cannot be avoided as a fraudulent transfer. Moreover, as reflected in *First Alliance,* not every transfer made or obligation incurred by a debtor engaged in a fraudulent scheme is made or incurred with the requisite fraudulent intent. *See In re First Alliance Mortg. Co.*, 471 F.3d at 1008-09. As such, the allegation that a Debtor allegedly transferred funds to a winning investor with the actual intent to defraud does not give rise to the inference that the Debtor Borrowers incurred and/or repaid loans from Lima with the same intent. *See In re First Alliance Mortg. Co.*, 471 F.3d at 1008-09; *see also Moriarty*, 2014 WL 6623005, at \*11 (Bankr. C.D. Cal. 2014) (dismissing actual fraudulent transfer claims at the pleading stage where plaintiffs failed to plead facts to support a reasonable inference that the subject transfers were connected to the alleged Ponzi scheme); *In re Foos*, 188 B.R. 239,

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 47

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

244 (Bankr N.D. Ill. 1995) (In dismissing fraudulent transfer claims against bank to recover repayments on secured loan, "[h]ere we have allegations that payments on loans and the granting of security for a loan were fraudulent transfers. Such circumstances are significantly different from payments that are made as part of and in furtherance of a Ponzi scheme and precludes this Court from inferring an intent to defraud . . . Where, as here, however, the individual who is operating the Ponzi scheme conducts ordinary business transactions outside of the Ponzi scheme, the basis for presuming fraud is not present and must be alleged in accordance with Rule 9(b).")

Second, the Trustees have failed to allege non-conclusory facts to support an inference that any repayments on the loans made by Lima were made in furtherance of an alleged fraudulent scheme as needed to avoid such payments as fraudulent transfers. The Amended Complaint's allegations amount to nothing more than threadbare legal conclusions. The Opposition does not identify specific allegations in the Amended Complaint from which this court can infer that the specific Debtor Borrowers, including non-Debtor BU 1121 14th, were Ponzi schemes, let alone that the specific transfers that the Trustees seek to avoid were made with actual fraudulent intent. Instead, the facts alleged in the Amended Complaint support the inference that Lima's secured loans were repaid in order to satisfy the applicable borrower's contractual obligations and nothing more. The conclusive allegation that the Debtors operated as a Ponzi scheme is not entitled to an assumption of truth under *Twombly*, including as to the specific Debtor Borrowers, and does not satisfy Rule 9(b). The Opposition does not dispute that the declaration of Jeffrey H. Kinrich does not analyze whether any of the specific Debtor-Borrowers constituted a legitimate profit-making business opportunity for

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

their investors or contain any specific allegations about the Debtor Borrowers. (*See* Mot. at 44:17-22.)

### E. The Constructive Fraudulent Transfer Claims Should Be Dismissed

The Opposition admits that the payments on account of Lima's loans paid down pre-existing debt. (*See, e.g.* Opp'n. at 42:8-9, describing repayment of debt as fraudulent transfers.) For this simple reason, under Ninth Circuit law, the constructive fraudulent transfer claims must be dismissed. *See In re Fitness Holdings Int'l*, 714 F.3d 1141, at n. 9 (9th Cir. 2013) ("a debtor who pays down pre-existing debt [has received reasonably equivalent value].") The Trustees do not dispute or address that in the Ninth Circuit, under the Ninth Circuit's holding in *Fitness Holdings,* "a transfer is not constructively fraudulent if it is made in repayment of a claim or right to payment, under state law.") *See id.* at 1141.

The Opposition does not respond to the Motion's argument that the Amended Complaint contains nothing more than threadbare recitals of its constructive fraudulent transfer claims and does not allege any non-conclusory facts regarding reasonably equivalent value and insolvency. (*See* Mot. at 42:8-43:2.) The Opposition does not cite to *any* portion of the Amended Complaint to identify allegations in support of the Trustees' constructive fraudulent transfer claims, let alone specific allegations that would satisfy Rules 8(a), 9(b) and 12(b)(6). (*See* Opp'n. at 47:18-48:5.)

### F. Pre-September 29, 2021 Transfers Under 11 U.S.C. § 548 Are Time-Barred

Claims under 11 U.S.C. § 548 are subject to a two-year look back period. *See* 11 U.S.C. § 548(a)(1). The Opposition does not dispute that any claims under

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 49

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

11 U.S.C. § 548 to avoid any transfer that occurred prior to September 29, 2021 are outside of § 548's two-year look back period. (*See* Mot. at 43:3-12; Opp'n. at 37, n. 19.)  Accordingly, the Counter-Defendants request that the order on the Motion specify that all § 548 claims for pre-September 29, 2021 transfers are dismissed.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

# VIII. <u>CONCLUSION</u>

For the foregoing reasons, Wilmington and Lima request that the court dismiss all claims asserted in the Amended Complaint with prejudice.   The Amended Complaint's defects, including the Trustees' lack of standing and the Ninth Circuit law under *First Alliance* and *Fitness Holdings*, cannot be cured by amendment.

Respectfully submitted,

Dated:  October 1, 2025        BORDE LAW PLLC

*/s/ Manish Borde*
MANISH BORDE (WSBA *#39503*)
1700 7TH Ave., Suite 2100
Seattle, WA 98101-1360
mborde@bordelaw.com

RAINES FELDMAN LITTRELL LLP

*/s/ Robert S. Marticello*
ROBERT S. MARTICELLO (*Admitted Pro Hac Vice*)
MICHAEL L. SIMON (*Admitted Pro Hac Vice*)

*Attorneys for Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner of MFA 2022-RTL1 Trust and Lima One Capital, LLC*

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 51

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys who have appeared in the case.

DATED this 1st day of October, 2025.

/s/ Manish Borde

Manish Borde, WSBA #39503
BORDE LAW PLLC
1700 7th Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 531-2722
E-mail: mborde@bordelaw.com

REPLY TO OPPOSITION TO MOTION TO DISMISS AMENDED
COUNTERCLAIM COMPLAINT – Page 52

BORDE LAW PLLC
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722