**BORDE LAW PLLC**
Manish Borde
1700 7th Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 531-2722

HONORABLE WHITMAN L. HOLT
HEARING DATE: October 15, 2025
HEARING TIME: 2:00 p.m.
LOCATION: Telephonic

**RAINES FELDMAN LITTRELL LLP**
Robert S. Marticello (admitted *Pro Hac Vice*)
*rmarticello@raineslaw.com*
Michael L. Simon (admitted *Pro Hac Vice*)
*msimon@raineslaw.com*
4675 MacArthur Court, Suite 1550
Newport Beach, CA 92660
Telephone:  (310) 440-4100/Facsimile:  (310) 691-1943

Attorneys for Wilmington Savings Fund Society, FSB,
not in its individual capacity, but solely as Owner of
MFA 2022-RTL1 Trust and Lima One Capital, LLC

## UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>ICAP ENTERPRISES INC., *et al.*<br><br>Debtors.[1] | Chapter:  11<br>Lead Case No.:  23-01243-WLH11<br>Jointly Administered<br>Adv. Pro. No.: 24-80022-WLH<br><br>**SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIM COMPLAINT** |

---

[1] The "Debtors" (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding1, LLC (23-01256-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01253-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253- 11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250- 11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11) ; Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); and iCap Holding 6 LLC (23-01274-11).

SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE ISO
MOTION TO DISMISS AMENDED COUNTERCLAIM
COMPLAINT – Page 1

Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner of MFA 2022-RTL1 Trust; and Lima One Capital, LLC,

     Plaintiffs,

           v.

VH 1121 14th, LLC; and VH Willows Townhomes, LLC,

     Defendants.

---

Lance Miller and Seth Freeman, Co-Trustees of the iCap Trust, on behalf of the iCap Trust and Contributing Claimants to the iCap Trust,

     Counter-Claimants.

           v.

Wilmington Savings Fund Society, FSB, in its individual capacity, and as Owner of MFA 2022-RTL1 Trust; and Lima One Capital, LLC,

     Counter-Defendants.

---

## I.   **<u>INTRODUCTION</u>**

Pursuant to Federal Rule of Evidence 201, Plaintiffs and Counter-Defendants Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner of MFA 2022-RTL1 Trust; and Lima One Capital, LLC (together, "**Counter-Defendants**") respectfully request that the court take judicial notice of the attached Exhibits 6 and 7:

SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE ISO
MOTION TO DISMISS AMENDED COUNTERCLAIM
COMPLAINT – Page 2

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

1.      The *Schedules of Assets and Liabilities* of VH 1121 14th, LLC [Docket No. 5, Case No. 23-01264-WLH11] (the "**VH 1121 Schedules**").   A true and correct copy of the VH 1121 Schedules is attached hereto as **Exhibit 6**.

2.      The *Voluntary Petition* for iCap Enterprises, Inc. [Docket No. 1, Case No. 23-01243-WLH11] (the "**iCap Petition**").  A true and correct copy of relevant excerpts of the iCap Petition is attached hereto as **Exhibit 7**.

## II.    LEGAL STANDARD

Under Federal Rule of Evidence 201(b), courts may take judicial notice of any fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonable be questioned."  Fed. R. Evid. 201(b).  Federal Rule of Evidence 201(b) permits courts to judicially notice undisputed matters of public record, including "public records and government documents available from reliable sources on the internet."  *Gerritsen v. Warner Bros. Ent. Inc.,* 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (alteration and citation omitted); *Swahili v. Wells Fargo Bank NA,* 2023 WL 8600599, at *5 (C.D. Cal. Dec. 7, 2023) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688, 690 (9th Cir. 2001)).

## III.    ARGUMENT

The VH 1121 Schedules and the iCap Petition, attached hereto as Exhibits 6 and 7, respectively, are proper subjects of judicial notice because they are records of the United States Bankruptcy Court and no factual dispute exists as to the documents' accuracy.  *See* Fed. R. Evid. 201(b).  Courts are empowered to and

SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE ISO
MOTION TO DISMISS AMENDED COUNTERCLAIM
COMPLAINT – Page 3

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

24-80022-WLH     Doc 45     Filed 10/01/25     Entered 10/01/25 21:00:11     Pg 3 of 59

routinely take judicial notice of "matters of public record outside of the pleadings," including court files and records. *See, e.g., In re Gordon-Brown*, 340 B.R. 751 (Bankr. E.D. Pa. 2006) (A bankruptcy court may take judicial notice of the content of bankruptcy schedules); *In re Ingrim Family, LLC*, 592 B.R. 368, 373 (Bankr. W.D. Wa. 2018) ("statements in bankruptcy schedules that are executed under penalty of perjury, when offered against a debtor, are eligible as judicial admissions.")

Because the VH 1121 Schedules, the iCap Petition, and their contents "can be accurately and readily determined from sources whose accuracy cannot reasonably be question," they are proper subjects for judicial notice and for consideration in ruling on Counter-Defendants' Motion to Dismiss.

///
///
///
///
///
///
///
///
///
///
///
///
///

SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE ISO
MOTION TO DISMISS AMENDED COUNTERCLAIM
COMPLAINT – Page 4

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

24-80022-WLH    Doc 45    Filed 10/01/25    Entered 10/01/25 21:00:11    Pg 4 of 59

## IV.    __CONCLUSION__

For the foregoing reasons, Counter-Defendants respectfully request that the court take judicial notice of Exhibits 6 and 7.


Respectfully submitted,

Dated:  October 1, 2025        BORDE LAW PLLC


_/s/ Manish Borde_
MANISH BORDE (WSBA *#39503*)
1700 7TH Ave., Suite 2100
Seattle, WA 98101-1360
mborde@bordelaw.com


RAINES FELDMAN LITTRELL LLP


_/s/ Robert S. Marticello_
ROBERT S. MARTICELLO (*Admitted Pro Hac Vice*)
MICHAEL L. SIMON (*Admitted Pro Hac Vice*)

*Attorneys for Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner of MFA 2022-RTL1 Trust and Lima One Capital, LLC*

SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE ISO
MOTION TO DISMISS AMENDED COUNTERCLAIM
COMPLAINT – Page 5

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys who have appeared in the case.

DATED this 1st day of October, 2025.

_/s/ Manish Borde_____

Manish Borde, WSBA #39503
BORDE LAW PLLC
1700 7th Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 531-2722
E-mail: mborde@bordelaw.com

*Counsel for Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner of MFA 2022-RTL1 Trust and Lima One Capital, LLC*

SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE ISO
MOTION TO DISMISS AMENDED COUNTERCLAIM
COMPLAINT – Page 6

BORDE LAW PLLC
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

# EXHIBIT 6

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

EASTERN          District of WASHINGTON
                              (State)

Case number (*If known*): _____ Chapter 11

☐ Check if this is an
amended filing

<u>Official Form 201</u>

# Voluntary Petition for Non-Individuals Filing for Bankruptcy        06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | |
|---|---|
| 1. **Debtor's name** | iCap Enterprises, Inc. |

| | |
|---|---|
| 2. **All other names debtor used in the last 8 years** <br><br> Include any assumed names, trade names, and *doing business as* names | Altius Development, Inc. |

3. **Debtor's federal Employer Identification Number** (EIN)    4 7 - 5 3 7 0 9 1 3

4. **Debtor's address**

**Principal place of business**

3535    Factoria Boulevard
Number    Street

Suite 500

Bellevue          WA    98009-1298
City              State    ZIP Code

King County
County

- Office closed.

**Mailing address, if different from principal place of business**

Number        Street

P.O. Box 53232
P.O. Box

Bellevue          WA    98015
City              State    ZIP Code

**Location of principal assets, if different from principal place of business**

Number        Street

City            State    ZIP Code

5. **Debtor's website** (URL)    _____

**6. Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other. Specify: _____

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)
☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

<u>5</u>  <u>3</u>  <u>1</u>  <u>3</u>

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7
☐ Chapter 9
☒ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

23-80002-WLH11   Doc 45   Filed 09/09/23   Entered 09/09/23 26:08:22   Pg 9 of 59

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes.  District _____  When _____  Case number _____
                                       MM / DD / YYYY

         District _____  When _____  Case number _____
                                       MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☒ Yes.  Debtor  See Rider 1 _____  Relationship _____

         District _____  When _____
                                              MM / DD / YYYY

         Case number, if known _____

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

Number    Street

_____

City _____  State ____  ZIP Code _____

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

| 13. Debtor's estimation of available funds | Check one: |
|---|---|
| | ☒ Funds will be available for distribution to unsecured creditors. |
| | ☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors. |

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☒ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☒ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☒ $100,000,001-$500 million | ☐ More than $50 billion |

## ▮ Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  09/29/2023
             _____
             MM / DD / YYYY

✗  _____          Lance Miller
   Signature of authorized representative of debtor    _____
                                                       Printed name

   Title  Chief Restructuring Officer
          _____

23-01242-WLH11   Doc 45   Filed 09/29/23   Entered 09/29/23 21:00:12   Pg 11 of 59

**18. Signature of attorney**  ✗ /s/ Dakota Pearce_____  Date  09/29/2023_____

Signature of attorney for debtor                            MM / DD / YYYY

Dakota Pearce_____
Printed name
Buchalter, A Professional Corporation_____
Firm name
1420 5th Ave., Suite 3100_____
Number    Street
Seattle_____  WA_____  98101_____
City                                    State    ZIP Code

(206) 319-7052_____          dpearce@buchalter.com_____
Contact phone                          Email address

57011_____          WA_____
Bar number                            State

## Rider 1

The Debtor and each of the affiliated entities listed in the table below filed in the Court a voluntary petition for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101-15332.

| Company |
| --- |
| 725 Broadway, LLC |
| iCap @ UW, LLC |
| iCap Broadway, LLC |
| iCap Campbell Way, LLC |
| iCap Enterprises, Inc. f/k/a Altius Development, Inc. |
| iCap Equity, LLC |
| iCap Funding LLC |
| iCap Investments, LLC |
| iCap Management LLC |
| iCap Northwest Opportunity Fund, LLC |
| iCap Pacific Income 4 Fund,, LLC |
| iCap Pacific Income 5 Fund, LLC |
| iCap Pacific Northwest Opportunity and Income Fund, LLC |
| Icap Pacific NW Management, LLC |
| iCap Realty, LLC |
| iCap Vault I, LLC |
| iCap Vault Management, LLC |
| iCap Vault, LLC |
| Senza Kenmore, LLC |
| UW 17TH AVE,LLC |
| Vault Holding 1, LLC |
| VH 1121 14TH LLC |
| VH 2nd Street Office LLC |
| VH Pioneer Village LLC |
| VH Senior Care LLC |
| VH Willows Townhomes LLC |

DocuSign Envelope ID: 5A703B32-BCF4-4841-985F-3610594E9843

**ACTION BY WRITTEN CONSENT OF THE
CHIEF RESTRUCTURING OFFICER OF ICAP ENTERPRISES INC.
AND MANAGER OF CERTAIN AFFILIATES**

**September 29, 2023**

  The undersigned, acting as the sole member of the Board of Directors and Chief Restructuring Officer of iCap Enterprises, Inc. ("Enterprises") and of each of the limited liability companies whose names are set forth on <u>Schedule 1</u> attached hereto (each, a "***Company***" and collectively with Enterprises, the "***Companies***"), where applicable, as Manager of each, in each case in accordance with each Company's respective organizational documents and with the applicable limited liability company laws of the jurisdiction of formation of each Company (the "***LLC Laws***"), hereby consents to and approves the adoption of the following resolutions and each and every action effected thereby or pursuant thereto by written consent as if such actions had been taken at a meeting of the Board of Directors or by the Manager of each such Company.

  **WHEREAS**, Chris Christensen agreed to irrevocably resign from all officer positions held with Enterprises and from his position as Manager of each of the Companies pursuant to the Term Sheet dated August 23, 2023 that was subsequently incorporated into the *Order Approving Stipulated Motion For (1) Modification of Temporary Restraining Order Against Defendants iCap, etc.* entered by the Hon. Brian McDonald, Superior Court of the State of Washington for King County on September 25, 2023 (the "***Stipulated Resignation***");

  **WHEREAS**, pursuant to the terms of the Stipulated Resignation and related resolutions of the Companies on September 28, 2023, Lance Miller was appointed as Chief Restructuring Officer of Enterprises and where applicable, Manager of the Companies (the "***Chief Restructuring Officer***");

  **WHEREAS**, the Chief Restructuring Officer has reviewed and considered materials presented by legal and financial advisors of the Companies and former management regarding the liabilities and liquidity situation of the Companies, the strategic alternatives available to each of them, and the impact of the foregoing on each of the Company's businesses;

  **WHEREAS**, the Chief Restructuring Officer has received advice from the legal and financial advisors of the Companies and former management regarding the possible need to liquidate or restructure the Companies, and has fully considered each of the strategic alternatives available to each Company, and the impact of the foregoing on each Company's business and its stakeholders;

  **WHEREAS**, the Chief Restructuring Officer has reviewed and considered the recommendations of the Companies' legal and financial advisors regarding the relief that would be necessary and advisable to obtain from the Bankruptcy Court to allow the Companies to effectively transition into operation as debtors in possession (collectively, the "***First Day Relief***") under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***");

  **WHEREAS**, the Chief Restructuring Officer has determined that it is fair, appropriate, advisable, necessary, and in the best interests of each Company, its creditors, members and other

stakeholders that each Company file or cause to be filed a voluntary petition for relief under the provisions of chapter 11 of the Bankruptcy Code and seek the First Day Relief; and

**WHEREAS**, the Chief Restructuring Officer desires to approve the following Resolutions.

**NOW, THEREFORE, BE IT:**

## CHAPTER 11 PETITION AND FIRST DAY RELIEF

**RESOLVED**, that in the judgment of the Chief Restructuring Officer, it is desirable and in the best interests of the creditors, members and other stakeholders of each Company, that each Company listed on the attached Schedule 2 (i) file or cause to be filed a voluntary petition for relief under the provisions of chapter 11 of the Bankruptcy Code (the "***Filing Companies***") and (ii) seek the First Day Relief;

**RESOLVED**, that the Chief Restructuring Officer, be, and hereby is, authorized and empowered to execute and file on behalf of each Filing Company all petitions, schedules, lists, and other motions, papers or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of the business of each such Filing Company;

## DEBTOR-IN-POSSESSION FINANCING

**RESOLVED**, that, in connection with the commencement of the chapter 11 cases of the Filing Companies, (1) entry into a debtor-in-possession loan facility in the amount of up to $8,250,000,000 provided under that certain Debtor-in-Possession Credit and Security Agreement (the "***DIP Credit Agreement***") by and among Serene Investment Management, LLC and/or its affiliated entities, the lenders party thereto from time to time (the "***DIP Lenders***"), including, without limitation, (i) the execution and delivery of any credit documents (ii) the consummation of the transactions contemplated thereby, and (iii) the granting of the security interest in, liens upon and pledge of collateral to secure the obligations under the DIP Credit Agreement, be, and hereby is, authorized and approved on behalf of each of the Companies where applicable and (2) the Chief Restructuring Officer, acting in some instances as Manager, be, and hereby is, authorized, empowered and directed, in the name and on behalf of the Companies where applicable, (a) to negotiate the use of cash collateral and to grant adequate protection in the form of additional security interests or priority claims in connection therewith, (b) to (i) negotiate, execute, and deliver the DIP Credit Agreement (ii) cause the Companies to consummate the transactions contemplated by the DIP Credit Agreement, and (iii) grant security interests in, liens upon and pledge of the Collateral (as defined in the DIP Credit Agreement or any other agreement or instrument executed in connection with the DIP Credit Agreement) in favor of the DIP Lenders, to secure the obligations under the DIP Credit Agreement, in each instance, on such terms and conditions as the Chief Restructuring Officer may consider necessary, proper or desirable, and (c) to take such additional action and to execute and deliver each other agreement, instrument, certificate or document to be executed and delivered, in the name and on behalf of the Chief Restructuring Officer on behalf of the Companies, pursuant thereto or in connection therewith, all with such changes therein and additions thereto as the Chief Restructuring Officer, acting on in

some instances as Manager, approves, such approval to be conclusively evidenced by the taking of such action or by the execution and delivery thereof;

## RETENTION OF PROFESSIONALS

RESOLVED, that the Chief Restructuring Officer be, and hereby is, authorized and directed in the name and on behalf of the Companies to employ Paladin Management Group, LLC as restructuring financial advisor pursuant to the terms of the attached engagement letter and to continue to have Lance E. Miller serve as Chief Restructuring Officer in connection with any case commenced by any Company under the Bankruptcy Code and all related matters, and any such prior actions are hereby ratified in their entirety;

RESOLVED, that the Chief Restructuring Officer be, and hereby is, authorized and directed in the name and on behalf of the Companies to employ the law firm of Buchalter, A Professional Corporation, as general bankruptcy counsel to represent and assist the Companies in carrying out their respective duties under the Bankruptcy Code and to take any and all actions to advance the Companies' rights and obligations, and any such prior actions are hereby ratified in their entirety;

RESOLVED, that the Chief Restructuring Officer be, and hereby is, authorized and directed in the name and on behalf of the Companies to employ BMC Group Inc. as claims and noticing agent and administrative advisors in connection with any case commenced by the Companies under the Bankruptcy Code and all related matters, and any such prior actions are hereby ratified in their entirety;

RESOLVED, that the Chief Restructuring Officer be, and hereby is, authorized and directed in the name and on behalf of the Companies to employ any other professionals to assist the Companies in carrying out their respective duties under the Bankruptcy Code and to take any and all actions to advance the Companies' rights and obligations;

RESOLVED, that the Chief Restructuring Officer, acting on behalf of the Manager, is hereby authorized and directed in the name of and on behalf of the Companies to execute appropriate retention agreements, pay appropriate retainers, and cause to be filed appropriate applications for authority to retain the services of the foregoing professionals as necessary;

## ADDITIONAL FILINGS

RESOLVED, that the Chief Restructuring may at any time and from time to time may determine, in consultation with the financial and legal advisors of such Companies, that any one or more affiliated company not among the Filing Companies (each an "***Additional Filing Company***" and, collectively, the "***Additional Filing Companies***") that is desirable and in the best interests of the creditors, members and other stakeholders of such Additional Filing Company, that such Additional Filing Company (i) file or cause to be filed a voluntary petition for relief under the provisions of chapter 11 of the Bankruptcy Code; (ii) seek any First Day Relief as may be required; and (iii) become a party to the DIP Credit Agreement;

RESOLVED, that if a determination is made by the Chief Restructuring Officer, that any one or more Additional Filing Companies shall file or cause to be filed a voluntary petition for

BN 78782095v3

DocuSign Envelope ID: 5A703B32-BCF4-4841-985F-3610594E9843

relief under the provisions of chapter 11 of the Bankruptcy Code, then the resolutions set forth in this Action by Written Consent under the headings "CHAPTER 11 PETITION AND FIRST DAY RELIEF", "DEBTOR-IN-POSSESSION FINANCING", and "RETENTION OF PROFESSIONALS" shall be deemed to have been adopted on behalf of each such Additional Filing Company as though the Additional Filing Company was originally among the Companies;

## FURTHER ACTIONS AND PRIOR ACTIONS

**RESOLVED**, that in addition to the specific authorizations heretofore conferred upon the Chief Restructuring Officer, the Chief Restructuring Officer or his designee shall be, and each of them, acting alone, hereby is, authorized, directed, and empowered in the name of, and on behalf of, any Company, to take or cause to be taken any and all such further actions, to execute and deliver any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including filing fees, in each case as in such officer's or officers' judgment shall be necessary or desirable to fully carry out the intent and accomplish the purposes of the Resolutions adopted herein;

**RESOLVED**, that all acts, actions and transactions relating to the matters contemplated by the foregoing Resolutions done in the name of and on behalf of any Company, which acts would have been approved by the foregoing Resolutions except that such acts were taken before these Resolutions were certified, are hereby in all respects approved and ratified; and

**RESOLVED**, that a copy of these Resolutions of the Manager shall be filed in the records of each Company.

**[Remainder of Page Left Intentionally Blank]**

BN 78782095v3

**IN WITNESS WHEREOF**, the undersigned has executed this Action by Written Consent to be effective as of the date first written above.

ICAP ENTERPRISES, INC., f/k/a ALTIUS DEVELOPMENT, INC.

By: Lance Miller

*Lance Miller*

Its: **Chief Restructuring Officer, Sole Board Member**

ICAP PACIFIC NW MANAGEMENT, LLC
VAULT HOLDING, LLC
ICAP VAULT MANAGEMENT, LLC
ICAP VAULT, LLC
ICAP VAULT I, LLC
VAULT HOLDING 1, LLC
ICAP INVESTMENTS, LLC
ICAP PACIFIC NORTHWEST OPPORTUNITY AND INCOME
FUND, LLC
ICAP EQUITY, LLC
ICAP PACIFIC INCOME 4 FUND,, LLC
ICAP PACIFIC INCOME 5 FUND, LLC
ICAP NORTHWEST OPPORTUNITY FUND, LLC
ICAP FUNDING LLC
ICAP MANAGEMENT LLC
ICAP PACIFIC DEVELOPMENT LLC
ICAP HOLDING LLC
ICAP HOLDING 5 LLC
ICAP HOLDING 6 LLC
ICAP REALTY LLC
725 BROADWAY, LLC
SENZA KENMORE, LLC
ICAP CAMPBELL WAY, LLC
UW 17TH AVE, LLC
ICAP BROADWAY, LLC
VH 1121 14TH LLC
VH SENIOR CARE LLC
VH WILLOWS TOWNHOMES LLC
ICAP @ UW, LLC
VH 2ND STREET OFFICE LLC
VH PIONEER VILLAGE LLC
CS2 REAL ESTATE DEVELOPMENT LLC
LOFTS@CAMAS MEADOWS PHASE I, LLC
LOFTS@CAMAS MEADOWS PHASE II, LLC

*Lance Miller*

By: _____
Name: **Lance Miller**
Its: **Manager**

BN 78782095v3

DocuSign Envelope ID: 5A703B32-BCF4-4841-985F-3610594E9843

## Schedule 1

| Company |
| --- |
| iCap Enterprises, Inc. f/k/a Altius Development, Inc. |
| Icap Pacific NW Management, LLC |
| Vault Holding, LLC |
| iCap Vault Management, LLC |
| iCap Vault, LLC |
| iCap Vault I, LLC |
| Vault Holding 1, LLC |
| iCap Investments, LLC |
| iCap Pacific Northwest Opportunity and Income Fund, LLC |
| iCap Equity, LLC |
| iCap Pacific Income 4 Fund,, LLC |
| iCap Pacific Income 5 Fund, LLC |
| iCap Northwest Opportunity Fund, LLC |
| iCap Funding LLC |
| iCap Management LLC |
| iCap Pacific Development LLC |
| iCap Holding LLC |
| iCap Holding 5 LLC |
| iCap Holding 6 LLC |
| iCap Realty LLC |
| 725 Broadway, LLC |
| Senza Kenmore, LLC |
| iCap Campbell Way, LLC |
| UW 17TH AVE,LLC |
| iCap Broadway, LLC |
| VH 1121 14TH LLC |
| VH Senior Care LLC |
| VH Willows Townhomes LLC |
| iCap @ UW, LLC |
| VH 2nd Street Office LLC |
| VH Pioneer Village LLC |
| CS2 Real Estate Development LLC |
| Lofts@Camas Meadows Phase I, LLC |
| Lofts@Camas Meadows Phase II, LLC |

**Schedule 2**

| Company |
|---|
| 725 Broadway, LLC |
| iCap @ UW, LLC |
| iCap Broadway, LLC |
| iCap Campbell Way, LLC |
| iCap Enterprises, Inc. f/k/a Altius Development, Inc. |
| iCap Equity, LLC |
| iCap Funding LLC |
| iCap Investments, LLC |
| iCap Management LLC |
| iCap Northwest Opportunity Fund, LLC |
| iCap Pacific Income 4 Fund,, LLC |
| iCap Pacific Income 5 Fund, LLC |
| iCap Pacific Northwest Opportunity and Income Fund, LLC |
| Icap Pacific NW Management, LLC |
| iCap Realty, LLC |
| iCap Vault I, LLC |
| iCap Vault Management, LLC |
| iCap Vault, LLC |
| Senza Kenmore, LLC |
| UW 17TH AVE, LLC |
| Vault Holding 1, LLC |
| VH 1121 14TH LLC |
| VH 2nd Street Office LLC |
| VH Pioneer Village LLC |
| VH Senior Care LLC |
| VH Willows Townhomes LLC |

DocuSign Envelope ID: 5A703B32-BCF4-4841-985F-3610594E9843



September 28, 2023

Chris Christensen
CEO
iCap Enterprises, Inc.
iCap Investments, LLC
3535 Factoria Blvd., Suite 500
Bellevue, WA 98006

Re:   Revised and Restated Engagement of Paladin Management Group, LLC - Consulting
and CRO Services

Dear Mr. Christensen:

This Letter of Agreement ("Agreement"), effective as of July 14, 2023 (the "Effective Date"),
confirms the terms under which the entities referenced on the attached schedule (each, a
"Client" and collectively, the "Company") have retained Paladin Management Group, LLC, a
Nevada Limited Liability Company ("Paladin") to provide professional services.  This
Agreement revises, restates, and supersedes that certain Engagement Agreement dated July
14, 2023.

## 1.  Chief Restructuring Officer

Effective as of the CRO Effective Date, Paladin will make Lance Miller available to serve as
the Company's Chief Restructuring Officer (CRO).  The CRO will be an independent officer
with fiduciary duties to the Company, and will serve pursuant to corporate resolutions to be
passed by the governing authority (e.g., Board of Managers, Board of Directors, or Managing
Member) for each of the applicable Clients in form and substance acceptable to the CRO
(the "Corporate Resolutions").  Among other things, the CRO will be vested with the following
authority, delegated powers, and discretion (the "CRO Services"):

- To devise and implement a strategy or strategies for addressing the Company's
  debt(s), solvency or insolvency, liquidity, and/or financial condition (collectively, a
  "Restructuring");

- To retain and supervise professionals on behalf of the Company, including legal
  counsel, in connection with a Restructuring;

- To incur and authorize payment of expenses that the CRO determines are reasonably
  necessary in connection with a Restructuring;

- To authorize any Client to borrow funds, provide liens or other security, and/or to
  enter into any financing, cash collateral, or lending agreement or facility in
  connection with a Restructuring;

- In the reasonable exercise of the CRO's business discretion and judgment, to authorize the commencement of an insolvency proceeding or proceedings (an "Insolvency Proceeding") involving some or all of the Clients (including but not limited to state or federal receivership proceedings, or proceedings under title 11 of the U.S. Code (the "Bankruptcy Code");

- To supervise and otherwise manage all matters reasonably required in order to pursue or otherwise incident to an Insolvency Proceeding;

- To direct the Company's response or strategy in connection with any litigation(s) commenced by creditors of the Company;

- To settle or otherwise resolve debts or obligations of the Company;

- To authorize and direct the sale, disposition, abandonment, or other disposition of Company assets, in connection with a Restructuring; and

- Such other actions or omissions that the CRO reasonably determines are necessary and appropriate to pursue a Restructuring.

## 2. Consulting Services

Commencing with the Effective Date, Paladin will provide the following services to the Company (the "Consulting Services," and collectively with the CRO Services, the "Services"). Following the CRO's appointment, Paladin's professionals will report directly to the CRO.

- Assist in devising various restructuring strategies and assessing the business and financial impact of those strategies;

- Assist in negotiations with the Company's relevant stakeholders in connection with such strategies;

- Assist in developing and implementing cash management and cash flow forecasting processes;

- Assist in preparing and maintaining liquidity and cash projections and reporting of actual results;

- Prepare certain of the Clients to commence an Insolvency Proceeding;

- Prepare financial forecasts and reports that may be required by the CRO, or the Company's lenders and stakeholders;

- Strategic communication services, which will include but not be limited to, assessment and development of a strategic communications plan, development of communications materials, coordination of media contacts, interviews and other placements and guidance in interactions with media outlets, customers/clients, suppliers/vendors, and other business partners as appropriate;

- Administer any Insolvency Proceeding, once commenced, and assist with any negotiations and other interactions with the Company's stakeholders and their respective advisors in connection with the Insolvency Proceeding; and

- Advice and recommendations with respect to other related matters as the Client or its professionals may request from time to time, as agreed to by Paladin.

### 3. Term and Termination

The term of this Agreement and the Services will extend until terminated. Either Party may terminate this Agreement and the Services upon seven (7) days' notice to the other Party; provided, however, that termination by any of the Clients shall automatically result in termination as to all Clients. Immediately following termination, the Company shall take all steps reasonably necessary to effectuate removal and replacement (as applicable) of the CRO from all governmental registrations. Following termination, the Services shall immediately cease. The following sections of the Terms and Conditions shall survive termination: 1, 9, 10, 11, 12, 13, 14, 15, 18, and any other provision that would reasonably be expected to survive termination.

### 4. Retainer and Compensation

As compensation for the Services, Paladin will be paid an hourly rate. Paladin's hourly rates range from $375 to $850 per hour, depending on the personnel performing the work. The rate for Lance Miller is $850, and for Mike Lang is $650. In addition to the foregoing, in the event that the Company or any of the Clients commence preparation of an Insolvency Proceeding and thereafter for so long as the CRO Services are provided, the Company will pay a monthly fee of $50,000.

There will be a $50,000 retainer (the "Retainer") paid to Paladin promptly upon execution of this agreement. The Retainer will be an "evergreen" retainer, such that it will be replenished on a regular basis in order to ensure that the amount of the Retainer is, at all times, greater than Paladin's work in progress and accrued fees.

### 5. Conditions to Effectiveness

The Consulting Services will commence on the Effective Date. The CRO Services will commence upon the first date following occurrence of each of the following, unless such conditions are waived by Paladin (the "CRO Effective Date"):

a) Passing of the Resolutions;

b) The Company has provided Paladin with written verification that the CRO has been added as a named beneficiary to all existing Directors' and Officers' Liability Insurance policies respecting the Company; and

c) The Company has paid the Retainer, as set forth in Section 4.

### 6. Terms and Conditions

Attached hereto as <u>Appendix A</u> are Paladin's terms and conditions. By the Company's execution of this agreement, the Company acknowledges that it has read these terms and conditions, and that it agrees to be bound by each of these terms and conditions, which are hereby incorporated by reference as if fully set forth herein.

If the foregoing accurately sets forth the understanding between us, please so indicate by signing and returning this letter to Paladin.

Very truly yours,

PALADIN MANAGEMENT GROUP, LLC

By: _Lance Miller_____
Name:  Lance Miller
Title:     Partner

CONFIRMED AND AGREED:

Chris Christensen
on behalf of each Client

By: _Chris Christensen_____
Name:  Chris Christensen
Title:     CEO

4

## APPENDIX A

General Terms and Conditions – CRO Services
Paladin Management Group, LLC

### 1. Retainer and Compensation

(a) Hourly and Weekly Billing. Unless stated otherwise herein, the Company will be billed for Services provided by Paladin Personnel on an hourly basis at the current hourly rate of the Paladin Personnel performing the Services. Paladin adjusts its hourly rates periodically. The Company agrees to pay the hourly rates as reasonably adjusted. Paladin's fees and expenses will be billed to the Company as frequently as weekly and are payable upon receipt. Billable Services include services provided to the Company by Paladin Personnel commencing with the date hereof and continuing after termination of the engagement.

(b) Flat Fee Services. If the parties have agreed to a Flat Fee or a monthly fee, the Fee shall be paid in full in advance and shall be deemed earned upon receipt. The Fee will constitute payment for all services performed by Paladin Personnel within the scope of the Flat or monthly Fee ("Flat Fee Services"). Services performed by Paladin Personnel at the Company's request that are outside the scope of the Flat Fee Services will be billed on an hourly basis.

(c) Retainer. The Retainer ensures payment of Paladin's fees. Paladin may apply the Retainer to unpaid invoices without prior notice. Paladin may increase the Retainer to the extent required to ensure that the Retainer is sufficient to cover work in progress and outstanding invoices. The Company shall replenish the Retainer upon Paladin's request. The Retainer will not accrue interest. The balance of the Retainer after payment of Paladin's final invoice, if any, will be returned to the Company.

(d) Travel. The Company will be responsible for Paladin Personnel travel time and expenses, including travel time and expenses incurred in traveling to and from the Paladin Personnel's home offices to locations other than the Company's offices. Paladin will bill travel time at one-half of the applicable hourly rate; provided that Paladin will bill travel time at its normal hourly rates to the extent Paladin Personnel are performing Services while traveling.

(e) Expenses. The Company will pay or reimburse Paladin, as applicable, for all documented out-of-pocket expenses reasonably incurred by Paladin and Paladin Personnel in the performance of the Services through the termination date and the reasonable expenses incurred in connection with the Services after the termination date such as travel, and other expenses. Such expenses shall include travel, meals and lodging, delivery services, etc. In addition, in states where Paladin is obligated to collect sales taxes on professional services, such taxes will be billed to the Company.

(f) Administrative Fee. Paladin is entitled to an administrative fee equal to 4 ½% of the professional fees billed during any billing period. The administrative fee will cover ordinary administrative expenses such as cell phone charges, faxes, general copying expenses and similar ordinary expenses.

(g) Payment Terms; Interest. Fees and other amounts owed hereunder are due immediately upon receipt of an invoice. In the event that any amounts become past due by more than thirty (30) days, such amounts will accrue interest in the amount of 18.0% per annum.

### 2. Paladin Personnel

Except as otherwise provided in this Agreement, the Services may be performed by such employees, agents or independent contractors of Paladin, or of any subsidiary or affiliate of Paladin, as Paladin may determine. References to "Paladin Personnel" herein include those employees, agents, and independent contractors of Paladin and its subsidiaries or affiliates that perform Services for the Company.

### 3. Independent Contractor Status

Paladin shall serve as an independent contractor under this Agreement. Paladin will have exclusive control over the management and operation of the Services provided by Paladin Personnel and will be responsible for hiring, supervising and paying the wages or other compensation due to the Paladin Personnel in connection with this Agreement. No Paladin Personnel will be employed or engaged by the Company either as a director, officer, member, manager, partner, control person, employee, representative, agent or

i

DocuSign Envelope ID: 5A703B32-BCF4-4841-985F-3610594E9843

independent contractor, or in any other capacity; provided that the CRO will serve as an officer of the Company. No Paladin Personnel will be entitled to receive from the Company any compensation, vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. Paladin will be responsible for all employment, withholding, income and other taxes incurred in connection with the Services.

## 4. Company Acknowledgements

The Company acknowledges and agrees that neither Paladin, nor any Paladin Personnel, make any representations, guarantees or predictions that, *inter alia:* (i) An appropriate restructuring proposal or strategic alternative can be formulated; (ii) Any restructuring proposal or strategic alternative formulated by Paladin will achieve the intended results or will be more successful than other possible restructuring proposals or strategic alternatives; (iii) Restructuring is the best course of action for the Company; (iv) Any restructuring proposal or strategic alternative formulated by Paladin will be accepted by the Board, or the Company's creditors, shareholders and other stakeholders. The Company further acknowledges that numerous factors affect the Company's actual financial and operational results, and that these results may materially and adversely differ from the objectives of the restructuring plan or strategy formulated or proposed by Paladin.

## 5. Accuracy and Completeness of Information

The Company is responsible for providing Paladin with accurate and complete information and materials. The Company will provide Paladin with full and timely access to all Company personnel, books and records, including those of the Company's attorneys, accountants, other agents and third-party representatives, that Paladin Personnel reasonably request in connection with the performance of the Services. Paladin Personnel are entitled to rely on the accuracy of the information and materials provided and shall have no duty to verify the reliability, accuracy or completeness of such information. The Company is responsible for the accuracy and reliability of any plans, strategies, forecasts, quantitative financial models, projections and related computations prepared by Paladin in reliance upon any inaccurate or incomplete information or materials provided. Paladin shall incur no liability to the Company or any third-party arising out of any unreliable, inaccurate or incomplete information or materials provided by the Company.

## 6. Company Responsibilities

Except as set forth in the final sentence of this section, (i) the Company will make all decisions relating to whether the Company pursues or does not pursue a particular proposal, transaction, plan or strategy, and (ii) the Company is responsible for the implementation and outcome of any proposal, transaction, plan or strategy pursued by the Company. The Company is responsible for any Work Product (as defined below) that is modified in any material respect without Paladin's approval. In the event that Paladin Personnel are appointed an officer or director of the Company, this Section will not apply with respect to the specific decisions made or directed by such appointed officer or director.

## 7. Excluded Services

Neither Paladin nor any Paladin Personnel will perform any of the following services: insurance advice; investment advice; asset management services, legal, tax or regulatory advice or services; or accounting or audit services, including any financial statement reporting services that are subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

## 8. Bankruptcy Proceedings

In the event the Company resolves to file for bankruptcy under Chapter 11 of the Bankruptcy Code or has reason to believe an involuntary petition is likely to be filed, the following provisions shall apply:

(a) Approval of Engagement. The Company will promptly seek the Bankruptcy Court's approval of Paladin's engagement under this Agreement. The application, proposed order and other supporting documents submitted to the Bankruptcy Court seeking such approval must be satisfactory to Paladin in all respects. Unless agreed otherwise by Paladin, retention of Paladin shall be pursuant to section 363 of the Bankruptcy Code.

(b) Bankruptcy Services. The term Services as used in this Agreement shall include the services provided by Paladin Personnel in connection with any Bankruptcy Court proceedings ("Bankruptcy Services"). The term "Services" as used herein shall include the Bankruptcy Services.

(c) <u>Retainer</u>. Paladin may increase the Retainer amount to account for the additional Bankruptcy Services and the Company shall promptly pay Paladin the additional Retainer amount.

(d) <u>Reimbursement of Costs</u>. Subject to the approval of the Bankruptcy Court, the Company shall pay or reimburse Paladin for all costs reasonably incurred by Paladin or Paladin Personnel in connection with the Bankruptcy Services, including attorney fees.

## 9. <u>Insurance, Indemnification & Limitation of Liability</u>

As an inducement to Paladin to agree to the Engagement and as further consideration for the Services, the Company agrees to indemnify, insure, defend and limit Paladin's liability as provided below.

(a) <u>Indemnification</u>. The Company agrees to indemnify, defend and hold harmless Paladin, the CRO, Paladin Personnel, and their respective affiliates, former and present members, managers, insurers, directors, officers, employees, agents, independent contractors and controlling persons (each an "Indemnified Party" and collectively, the "Indemnified Parties") to the fullest extent permitted by law against any and all actual or threatened liabilities, losses, judgments, proceedings, litigations, or expenses (including legal fees and other costs reasonably incurred, including expert witness and investigator fees) (collectively, "Indemnified Claims"), arising out of or relating to (i) the Services performed under this Agreement, (ii) Paladin's or the CRO's involvement with the Company or its operations, or (iii) the Company's restructuring efforts generally; provided that indemnity in the preceding sentence shall not apply to any loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.

Promptly after receipt by an Indemnified Party of notice of its involvement in any threatened or actual action, matter, proceeding or investigation to which this Section might apply, the Indemnified Party shall, if a claim for indemnification in respect thereof is to be made hereunder, notify the Company of such involvement. Failure by an Indemnified Party hereunder to so notify the Company shall not relieve the Company from its obligations under this Section, except to the extent that the Company suffers actual prejudice as a result of such failure. The Indemnified Party shall have the option to control the defense of any Indemnified Claim, subject to reasonable consultation with the Company; in the event that the Indemnified Party so elects, the Company shall promptly advance or commence payment of any and all fees, expenses, and amounts incurred or to be incurred by the Indemnified Party in connection with the Indemnified Claim, in such frequency and amounts so as to ensure that the Indemnified Party does not pay any such amounts directly. In the event that the Indemnified Party elects for the Company to assume the defense of any Indemnified Claim:

    i. the counsel selected by the Company for such defense shall be reasonably satisfactory to the Indemnified Party;

    ii. the Indemnified Party shall have the right to participate in such action or proceeding and to retain its own counsel, but the Company shall not be liable for any legal expenses of other counsel subsequently incurred by the Indemnified Party in connection with the defense thereof unless (a) the Company has agreed to pay such fees and expenses, or (b) the Company shall have failed to employ counsel reasonably satisfactory to the Indemnified Party in a timely manner; and

    iii. The Company shall not consent to the terms of any compromise or settlement of any Indemnified Claim without the prior written consent of the Indemnified Party, which shall not be unreasonably withheld or delayed.

In the event that the parties dispute whether a claim, proceeding, or litigation constitutes an Indemnified Claim, the Company shall treat such claim, proceeding or litigation as an Indemnified Claim and honor its defense obligations with respect thereto until and unless a court of competent jurisdiction determines in a final, non-appealable order or judgment that the claim, proceeding, or litigation does not qualify for defense under this Section; in that event, the Indemnified Party shall be required to repay any out-of-pocket expenses or amounts previously paid by the Company as part of its defense obligations under this Section.

(b) <u>Limitation of Liability</u>. No Indemnified Party shall be liable (directly or indirectly, in contract or tort or otherwise) to the Company (including its successors and creditors) for any claim arising out of or relating to this Agreement, including any acts or omissions committed by Paladin Personnel in the performance of the Services. Notwithstanding the above, an Indemnified Party may be liable for such losses, claims, damages,

liabilities or expenses if they are found by a court of competent jurisdiction in a final judgment not subject to further appeal to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct or breach of Paladin's obligations under this Agreement; provided that: (i) no Indemnified Party will have any liability for special, consequential, incidental or exemplary damages or loss (including lost profits, savings or business opportunity); and (ii) the Indemnified Parties' aggregate liability is limited to and shall not exceed the total fees paid to Paladin by the Company for Services under this Agreement.

    (c)   Additional Indemnification and/or Insurance of the CRO.

        i.   Indemnification of CRO. The Company shall indemnify the CRO to the same extent as the most favorable indemnification it extends to its officers or managers.

        ii.   Within thirty (30) days of the CRO's appointment, the Company shall purchase, at its sole cost and expense, a Side A Directors and Officers insurance policy with the CRO as the sole beneficiary, with policy limits agreeable to the CRO from a carrier an subject to terms and conditions acceptable to the CRO.

    (d)   The Company agrees that it will not, without the prior consent of the Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

    (e)   The indemnification and limited liability provisions contained in this Agreement, including those contained in Section, shall survive and remain in full force and effect upon the termination of this Agreement and the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (or the conversion of an existing case to one under a different chapter).

    (f)   The rights provided herein are in addition to and shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under this Agreement, applicable law or otherwise.  The Parties agree that failure by the Company to honor its obligations under this Section will result in irreparable harm and injury to the affected Indemnified Party that monetary damages will not be sufficient to address.  As such, the Company agrees that, in addition to any and all remedies provided hereunder, breach of this Section shall entitle the Indemnified Parties to injunctive and other equitable relief deemed appropriate by a court of competent jurisdiction, without the need for entry of a bond or other security.

## 10. Conflicts

    Paladin is not currently aware of any relationships with other clients that create actual or potential conflicts of interest with the Company.  However, because Paladin serves clients on an international basis, it is possible that Paladin has rendered services to entities or individuals who are in competition with the Company or whose interests potentially conflict with the Company's interests, including creditors of the Company. Nothing in this Agreement prevents Paladin from providing services to such other entities or individuals now or in the future, provided Paladin makes appropriate arrangements to ensure that the confidentiality of the Company's information is maintained.  Further, Paladin will not represent the interests of any entities or individuals whose interests are known by Paladin to directly conflict with the Company's interests in connection with any matter in which Paladin is currently providing services to the Company.

## 11. Confidential Information

    Paladin acknowledges and agrees that Paladin Personnel will have access to certain Confidential Information belonging to the Company the disclosure or the use of which in a manner that does not serve the interests of the Company will cause irreparable damage and loss to the Company. For these reasons, Paladin covenants and agrees as follows:

    (a)   Use of Confidential Information. Except as otherwise expressly provided herein, Paladin will use the Confidential Information only in connection with the performance of the Services.  Paladin will use reasonable efforts to maintain the confidentiality of the Confidential Information.

    (b)   Confidential Information.

        i.   "Confidential Information" means any data or information that is proprietary to the Company

and/or its affiliates that is not generally known to the public, whether in tangible or intangible form, in any and all mediums, including, but not limited to: (i) financial information, projections, operations, sales estimates, business plans and performance results, marketing strategies, and business plans; (ii) plans for products or services, and customer or supplier lists; (iii) any scientific or technical information, invention, design, process, procedure, formula, improvement, technology or method; (iv) any concepts, reports, data, know-how, works-in-progress, designs, development tools, specifications, computer software, source code, object code, flow charts, databases, inventions, information and trade secrets; (v) any other information that should reasonably be recognized as confidential information of the Company; and (vi) any Work Product excluding the Engagement Tools (as those terms are defined in Section 13). Confidential Information need not be novel, unique, patentable, copyrightable or constitute a trade secret in order to be designated Confidential Information.

ii. Confidential Information shall not include information which: (i) was lawfully possessed by Paladin prior to receiving the Confidential Information from the Company; (ii) becomes rightfully known by Paladin from a third-party source not under an obligation to Company to maintain confidentiality; (ii) is generally known by the public through no fault of or failure to act by Paladin inconsistent with its obligations under this Agreement; (iv) is required to be disclosed in a judicial or administrative proceeding, or is otherwise requested or required to be disclosed by law or regulation, although the requirements of paragraph 5 hereof shall apply prior to any disclosure being made; and (v) is or has been developed by employees, consultants or agents of Paladin without violation of the terms of this Agreement, including the Engagement Tools.

(c)  Permitted Disclosures. Paladin may disclose Confidential Information: (i) to third parties in connection with the performance of its services under this Agreement so long as such disclosures are made pursuant to a confidentiality agreement in form and substance satisfactory to the Company or otherwise with the knowledge and consent of the Company; (ii) in connection with any dispute between Paladin and the Company under or concerning this Agreement, and (iii) pursuant to any request by FINRA, the Securities and Exchange Commission or any other regulatory authority, or pursuant to any order, subpoena or other regulatory or legal process. Paladin shall have the unrestricted right to use and disclose the Engagement Tools, and Paladin shall have the right to use the Company's name and logo, and to provide a description of the services provided by Paladin under this Agreement, in Paladin's public marketing materials.

(d)  Compelled Disclosure of Confidential Information. In the event that Paladin becomes legally compelled to disclose any Confidential Information, to the extent practicable and permitted by applicable law, Paladin shall provide the Company with prompt notice thereof prior to any disclosure of Confidential Information so that the Company may contest such requirement or seek a protective order or other appropriate remedy. Paladin shall use its reasonable best efforts to assist Company in such efforts.  In the event that disclosure is required, Paladin will furnish only that portion of the Confidential Information which is legally required.

(e)  Warranty Regarding Authority to Disclose Confidential Information, Indemnification.  The Company represents and warrants to Paladin that it has the authority to disclose the Confidential Information to Paladin and agrees to indemnify and defend Paladin against any claims or liability arising out of the Company's disclosure of the Confidential Information to Paladin and/or Paladin's use and disclosure of the Confidential Information pursuant to and in accordance with this Agreement.

(f)  Survival. The rights and obligations of the Parties under this Agreement shall survive the termination of this Agreement and remain binding for a period of one (1) year from the termination date.

(g)  Injunctive Relief.  Paladin acknowledges and agrees a violation of this Agreement could cause irreparable injury to the Company and as there is no adequate remedy at law for such violation, the Company may, in addition to any other remedies available to it at law or in equity, enjoin Paladin in a court of equity for violating or threatening to violate this Agreement.

(h)  Ownership of Confidential Information. All Confidential Information disclosed to Paladin by the Company shall remain the property of the Company.

(i)  Return or Destruction of Confidential Information. Upon written request of the Company, Paladin shall promptly return to the Company all Confidential Information and documents received or otherwise obtained from the Company and all copies and excerpts of the same.  Upon written request of the Company, Paladin

shall also permanently destroy all electronic and digital versions of the Confidential Information and the documents.

(j)   This Agreement shall supersede any preexisting Confidentiality and/or Nondisclosure of Confidential Information Agreement between Paladin and the Company.

## 12. Work Product: Engagement Tools

(a)   Work Product. Work Product refers to all work product created or produced by Paladin Personnel directly for the Company and delivered to the Company as part of this Engagement, including advice, analyses, financial models, reports, strategies, plans, proposals, and presentation materials.

(b)   Engagement Tools.  Engagement Tools includes all methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, templates, models and other intellectual property created, acquired or developed by Paladin Personnel independently of or in connection with this Engagement that are employed by Paladin Personnel in the development and creation of the Work Product.

(c)   Ownership and License. The Engagement Tools are the sole and exclusive property of Paladin. The Company shall not acquire any interest in the Engagement Tools except that Paladin grants the Company a royalty free, worldwide, perpetual, non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product.  The Work Product, excluding the Engagement Tools contained therein, is the sole and exclusive property of the Company.

(d)   No Third-Party Beneficiaries. The Work Product is intended solely for the use and benefit of the Company and this Agreement shall not be interpreted as conferring any rights on any other individual as a third-party beneficiary or otherwise.

(e)   Time and Data Sensitive Material.  The Company acknowledges that the appropriateness, accuracy and reliability of the Work Product is specific to factors existing at the time the Work Product is developed and that any changes in those factors including those resulting from the passage of time, and any modifications to the Work Product can materially affect the appropriateness, accuracy and reliability of the Work Product.

(f)   Non-Disclosure. The Company covenants and agrees not to disclose Work Product to any persons other than the Company's equity holders, board members, managers, officers, employees, attorneys, agents and other representative, unless:

    i.   Paladin consents to the disclosure;

    ii.   The Work Product contains no material modifications that have not been approved by Paladin; and

    iii.   The disclosure includes a disclaimer approved by Paladin.

(g)   Non-Responsibility: Indemnification.  Neither Paladin nor any Indemnified Party (as defined in the Section entitled "Insurance, Indemnification & Limitation of Liability") shall be liable for, and the Company shall indemnify, defend, and hold the Indemnified Parties harmless against, any claims, damages or expense, including attorney fees, arising out of the disclosure of Work Product by the Company or any of its representatives that is not authorized pursuant to subparagraph (f).

## 13. Alternative Dispute Resolution Procedure

Any controversy or claim arising out of or relating to this Agreement, or any breach thereof, shall be settled by arbitration seated in New York, New York. The physical location of the arbitration hearings shall be held in New York, New York, unless the Parties agree otherwise.  All proceedings, filings, and statements made in such arbitration shall be confidential. The arbitration shall be administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and, with respect to discovery and the taking of evidence, the International Bar Association's Rules on the Taking of Evidence in International Arbitration (the "IBC Rules").  Notwithstanding the IBC Rules, however, the Parties shall be entitled to up to twenty-five (25) written requests for admission ("RFA's") and up to two (2) depositions, each without leave of the arbitral tribunal. The deponent's attendance may be compelled by either request to the arbitral tribunal or order from a court of competent jurisdiction.  Failure by either Party to timely respond to RFA's shall be deemed an admission to such RFA's.  Failure by either Party to participate in the arbitration (including failure to attend a properly scheduled deposition, conference, or hearing) shall be deemed default and consent to the immediate entry by

the arbitral tribunal of an award in favor of the other Party in an amount equal to the maximum damages reasonably requested by such Party (giving all possible deference to the Parties' limited ability to prove damages in the absence of the other Party's participation). The arbitral tribunal shall immediately enter such award upon request by the participating Party. Any award granted to a Party pursuant to an arbitration in accordance with this Agreement shall be enforceable in foreign jurisdictions in the manner contemplated by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). Notwithstanding the foregoing, any Party may seek and obtain injunctive and other equitable relief from a court of competent jurisdiction to enforce the provisions of this Agreement without first seeking or obtaining any decision of the arbitral tribunal, with respect to the subject matter of this Agreement.

### 14. Company's Joint and Several Liability; Right of Setoff

If the Company consists of one or more individuals or entities, then the Company's obligations under this Agreement shall be joint and several obligations of each individual or entity comprising the "Company." Each such individual or entity shall execute this Agreement. Without limiting any other remedy that may be available to Paladin under this Agreement or applicable law, where the "Company" under this Agreement consists of more than one individual or entity, then Paladin shall have against each such individual or entity a right of setoff (notwithstanding any lack of mutuality) under which Paladin may set off against any claim against Paladin by any individual or entity comprising the Company group, all of the claims that Paladin may have against any or all of the individuals or other entities that comprise the Company.

### 15. Attorneys' Fees and Expenses

In the event of any dispute arising from or relating to these terms or the Agreement, Paladin and the CRO shall be entitled to reimbursement of any and all reasonable costs, damages, and expenses, including attorneys' fees, expended or incurred in connection with such dispute (whether or not Paladin is the substantially prevailing party).

### 16. Consent; Entire Agreement

In any instance under this Agreement where a party's consent is permitted or required to be given, such consent shall not be withheld unreasonably. This Agreement contains the entire Agreement of the parties with respect to its subject matter and supersedes all prior agreements and understandings between the Company and Paladin with respect to such subject matter. Any modification of or supplement to this Agreement shall be effective only if such modification or supplement is in writing and signed by all parties.

### 17. Multiple Originals

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. This Agreement may be executed by facsimile signatures or signatures forwarded via email.

### 18. Governing Law; Venue

This Agreement shall be governed by and construed and interpreted in accordance with the laws of Nevada (without regard to conflict of laws principles). Venue for all purposes shall be Washoe County, Nevada.

DocuSign Envelope ID: 5A703B32-BCF4-4841-985F-3610594E9843

CLIENT LIST

-Attached-

## Schedule 1

| Company |
| --- |
| iCap Enterprises, Inc. f/k/a Altius Development, Inc. |
| Icap Pacific NW Management, LLC |
| Vault Holding, LLC |
| iCap Vault Management, LLC |
| iCap Vault, LLC |
| iCap Vault I, LLC |
| Vault Holding 1, LLC |
| iCap Investments, LLC |
| iCap Pacific Northwest Opportunity and Income Fund, LLC |
| iCap Equity, LLC |
| iCap Pacific Income 4 Fund,, LLC |
| iCap Pacific Income 5 Fund, LLC |
| iCap Northwest Opportunity Fund, LLC |
| iCap Funding LLC |
| iCap Management LLC |
| iCap Pacific Development LLC |
| iCap Holding LLC |
| iCap Holding 5 LLC |
| iCap Holding 6 LLC |
| iCap Realty LLC |
| 725 Broadway, LLC |
| Senza Kenmore, LLC |
| iCap Campbell Way, LLC |
| UW 17TH AVE,LLC |
| iCap Broadway, LLC |
| VH 1121 14TH LLC |
| VH Senior Care LLC |
| VH Willows Townhomes LLC |
| iCap @ UW, LLC |
| VH 2nd Street Office LLC |
| VH Pioneer Village LLC |
| CS2 Real Estate Development LLC |
| Lofts@Camas Meadows Phase I, LLC |
| Lofts@Camas Meadows Phase II, LLC |

# EXHIBIT 7

Dakota Pearce (WSBA #57011)
BUCHALTER
1420 5th Avenue, Suite 3100
Seattle, Washington 98101
Telephone: (206) 319-7052
Email: dpearce@buchalter.com

Bernard D. Bollinger, Jr. (CA SBN: 132817)*
Julian I. Gurule (CA SBN: 251260)*
Khaled Tarazi (AZ SBN: 032446)*
BUCHALTER
1000 Wilshire Blvd., Suite 1500
Los Angeles, California 90017
Telephone: (213) 891-0700
Email: bbollinger@buchalter.com
        jgurule@buchalter.com
        ktarazi@buchalter.com

*Admitted *Pro Hac Vice*

*Counsel to Debtors and Debtors in Possession*

HONORABLE WHITMAN L. HOLT

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Chapter 11 |
| VH 1121 14TH ST, LLC, | Case No. 23-01264-WLH11 |
| Debtor. | Jointly Administered With Case No. 23-01243-WLH11 |
| | **SCHEDULES OF ASSETS AND LIABILITIES** |

**VH 1121 14TH ST, LLC, SCHEDULES OF ASSETS AND LIABILITIES- 1**

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

BN 79548681v1

**GLOBAL NOTES, RESERVATION OF RIGHTS, AND
STATEMENT OF LIMITATIONS, METHODOLOGY AND
DISCLAIMER REGARDING DEBTORS' SCHEDULES AND SOFAs**

iCap Enterprises, Inc., a Washington corporation, and its debtor affiliates (collectively, the "Debtors"), as debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), have filed their Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "SOFAs") with the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court"). The Debtors, with the assistance of their advisors, prepared the Schedules and SOFAs in accordance with section 521 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

The Debtors are contemporaneously filing these *Global Notes, Reservation of Rights, and Statement of Limitations, Methodology and Disclaimer Regarding the Debtor's Schedules and SOFAs* (the "Global Notes") as a supplement to and integral part of their Schedules and SOFAs. These are incorporated by reference into each of the Schedules and SOFAs and should be reviewed in connection with any review of the Schedules and SOFAs.

In preparing the Schedules and SOFAs, the Debtors relied on financial data derived from their books and records that were available at the time of such preparation. The Schedules and SOFAs reflect the Debtors' reasonably best efforts to report their assets and liabilities, based on their current books and records. The Debtors cannot be certain, however, that their books and records and/or these Schedules and SOFAs are valid, complete, accurate, or reliable. Among other things:

      1.    Certain of the Debtors' books and records and financial statements have not historically been the subject of an audit.

      2.    At various times (including the period leading to the Petition Date), the Debtors did not employ or retain a full-time Chief Financial Officer or similar executive with responsibility with respect to their finances and books and records.

IN ADDITION TO THE FOREGOING, PARTIES REVIEWING THE SCHEDULES AND SOFAS SHOULD BE ADVISED THAT CERTAIN OF THE DEBTORS' FORMER INSIDERS, INCLUDING THEIR FORMER CHIEF EXECUTIVE OFFICER, ARE THE SUBJECTS OF PENDING ALLEGATIONS INVOLVING FRAUDULENT MISREPRESENTATIONS. THE DEBTORS ARE NOW UNDER THE SOLE MANAGEMENT AND CONTROL OF A NEWLY INSTALLED CHIEF EXECUTIVE OFFICER (the "CRO"), BUT THE CRO HAS HAD LIMITED TIME AND RESOURCES TO REVIEW AND VALIDATE THE DEBTORS' BOOKS AND RECORDS. The Debtors cannot be certain that their books and records and/or these Schedules and SOFAs are valid, complete, accurate, or reliable, and by executing the Schedules and SOFAs, the Debtors and their CRO do not make any representation, warranty or assurance as to the foregoing.

Nothing contained in the Schedules and SOFAs shall constitute a waiver of any of the Debtors' rights or an admission with respect to their Chapter 11 Cases, including, without limitation, any issues involving equitable subordination, defenses or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant applicable laws to recover assets or avoid transfers.

**Totals**

All total figures in the Schedules and SOFAs represent the sum of all known amounts stated in the Schedules and SOFAs. To the extent there are disputed, contingent, unliquidated, or otherwise undetermined amounts, the actual total may materially differ. The indication of an amount as "unknown," "disputed," "contingent," "unliquidated," or "undetermined" is not intended to reflect that such amount is immaterial.

**No Admission**

Nothing contained in the Schedules and SOFAs is intended or should be construed as an admission to the validity of any claim against the Debtors or a waiver of the Debtors' rights to dispute any claim or assert any cause of action or defense as appropriate.

**Recharacterization**

Notwithstanding that the Debtors have made reasonable best efforts to correctly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and SOFAs, the Debtors may have improperly characterized, classified, categorized or designated certain items. The Debtors reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and SOFAs as necessary or appropriate.

**Liabilities**

The Debtors allocated liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and SOFAs. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change. The Debtors reserve all rights to modify, amend, or supplement the Schedules and SOFAs as necessary or appropriate.

The liabilities listed on these Schedules do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim.

**Leases**

Nothing in the Schedules or SOFAs (including, without limitation the failure to list leased property or equipment as "owned") is, or shall be construed as, an admission as to the determination of legal status of any lease (including whether any lease is a "true lease" or "disguised financing"), and the Debtors reserve all their rights with respect to such issues.

**Claims of Third-Party Related Entities**

Although the Debtors have made reasonable efforts to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated and/or contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities. Therefore, to the extent that the Debtors have classified claims of a creditor as disputed, unliquidated and/or contingent, all claims of such creditor's affiliates listed in the Schedules shall similarly be considered as disputed, unliquidated and/or contingent, whether they are designated as such.

**Debtor Alias**

Debtor iCap Pacific Development LLC was formerly known as iCap Development LLC. References in the Debtors' books and records to iCap Development LLC have been changed to reflect its current name.

## SPECIFIC DISCLOSURES WITH RESPECT TO THE DEBTORS' SCHEDULES

**Schedule A/ B**

Except with respect to real property or as otherwise set forth herein, the amounts listed on Schedule A or Schedule B represent the value of each Debtor's assets as reflected in the Debtor's books and records (net of depreciation or amortization where applicable). The Debtors have not completed an independent review of the value of these assets. The actual value of the assets listed may differ significantly from the amounts reflected in each the Schedules and SOFAs.

**Schedule A/B Q3 (iCap Campbell Way LLC):** Cash listed is comprised of proceeds of that certain Promissory Note, dated September 13, 2023, by and between various of the Debtors and Serene Investment Management, LLC (which note was subsequently repaid under that certain Debtor-In-Possession Loan and Security Agreement, dated October 3, 2023 by and between Serene Investment Management, LLC and the Debtors). Proceeds were paid to iCap Campbell Way LLC on behalf of multiple Debtors.

**Schedule A/B Q3 (Senza Kenmore LLC):** Cash for this Debtor is collateral for a construction-related bond.

**Schedule A/B Q10, Q71 and Q77:** Responses to Q10 (accounts receivable) are limited to AR owed by third parties that are unrelated to the Debtors or their affiliates. With respect to obligations

owed by parties related to the Debtors or their affiliates: (i) notes receivable listed on Q71 are comprised of documented and recorded deeds of trust, and (ii) intercompany notes that are not recorded or otherwise documented in standalone agreements are reflected on Schedule A/B Q77.

**Schedule A/B Q77 (iCap Investments, LLC):** According to books and records for iCap Investments, LLC, the Debtors' owner and former CEO, Chris Christensen owes a note receivable totaling $3,085,897.00. This obligation arises from expenses incurred in connection with development and construction of real property located in Issaquah, Washington. These amounts were paid to Mr. Christensen, who then remitted the expenses to the ultimate payees (e.g., contractors and suppliers). The Debtors have discussed these payments and the existing note receivable with Mr. Christensen. Mr. Christensen believes that these expenses should not have been recorded on the Debtors' books and records as a note receivable, and disputes the validity and/or enforceability of the receivable. The Debtors are continuing to investigate the genesis and validity of this receivable.

**Schedule A/B Q74 and Q75:** The Company's books and records do not reflect any causes of action. The Debtors are investigating whether causes of action exist. Omission of a cause of action in this Schedule is not intended to, and should not be construed as, a waiver or inference that causes of action do not exist.

**Schedule D:** Claims reflected herein are scheduled based on a combination of recent title reports and other supporting documentation for the Debtors' known real estate assets. The Debtors are aware that certain of the Debtors' investor-related obligations were characterized or otherwise marketed as secured. The Debtors' books and records, however, do not reflect these Claims as secured, and the Debtors are not aware of any perfected security interests with respect to those Claims. The investor-related obligations are, therefore, reflected as general unsecured claims on Schedule F.

**Schedule F:** General unsecured claims are scheduled based on the Debtors' books and records. The Debtors' ordinary course efforts to maintain books and records ceased in March 2023. The Debtors have attempted to update books and records for activity between March 2023 and the Petition Date, but these efforts may not be complete. To the extent new information is discovered, the Debtors will amend these schedules.

**Schedule F (Investor Totals)**: Various of the Debtors reflect investor claims. Totals differ from those reflected in the *Declaration of Lance Miller in Support of First Day Motions* [Dkt. No. 23], because the amounts reflected in the Schedules include some refinements on interest calculations.

## SPECIFIC DISCLOSURES WITH RESPECT TO THE DEBTORS' SOFAs

**SOFA Q3:** Intercompany payments are not reflected on this disclosure, because the Debtors' current understanding is that intercompany transfers were not on account of existing debts.

**SOFA Q11**: Payments to the Debtors' professionals are reflected on the Statements for the Debtors whose bank accounts made the transfers at issue. Those transfers, in some instances, were

on behalf of other Debtors. The Debtors have not completed an accounting to determine how these payments should be allocated across the various Debtor entities.

**SOFA Q30:** The Debtors' books and records reflect some payments to or on behalf of insiders that appear to be erroneously entered. This SOFA disclosure does not reflect those entries. To the extent the Debtors determine that those entries were, in fact, legitimate, the Debtors will amend this disclosure to reflect them.

## <u>Right to Amend and/or Supplement</u>

The Debtors reserve the right to amend and/or supplement the Schedules and SOFAs as may be necessary or appropriate.

## General Disclaimer

The Debtors have prepared the Schedules and SOFAs based on the information reflected in the Debtors' books and records. However, inasmuch as the Debtors' books and records have not been audited, the Debtors cannot warrant the absolute accuracy of these documents. The Debtors have made a diligent effort to complete these documents accurately and completely. To the extent additional information becomes available, the Debtors will amend and supplement the Schedules and SOFAs.

The Debtors and their officers, employees, agents, attorneys and financial advisors do not guarantee or warrant the accuracy, completeness or timeliness of the data that is provided herein and shall not be liable for any loss or injury arising out of or caused, in whole or in part, by the acts, errors or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating or delivering the information contained herein. The Debtors and their officers, employees, agents, attorneys and financial advisors expressly do not undertake any obligation to update, modify, revise or re-categorize the information provided herein or to notify any third party should the information be updated, modified, revised or re-categorized. In no event shall the Debtors or their officers, employees, agents, attorneys and financial advisors be liable to any third party for any direct, indirect, incidental, consequential or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business or lost profits), whether foreseeable or not and however caused.

-5-

Fill in this information to identify the case:

Debtor name        VH 1121 14th St, LLC

United States Bankruptcy Court for the: Eastern _____ District of Washington
                                                                              (State)

Case number (If known):  23-01264

☐ Check if this is an amended filing

# Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals

**12/15**

---

### Part 1:  Summary of Assets

1. **Schedule A/B: Assets–Real and Personal Property** (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B*..............................................................................

   $ 2,855,515.67
   Plus Unknown

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*............................................................................

   $ Unknown
   Plus Unknown

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B*..............................................................................

   $ 2,855,515.67
   Plus Unknown

---

### Part 2:  Summary of Liabilities

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*..........................

   $ 3,000,000.00
   Plus Unknown

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F* ....................................................

   $ 0.00
   Plus Unknown

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F* ...............................

   + $ 0.00
   Plus Unknown

4. **Total liabilities**..............................................................................................................
   Lines 2 + 3a + 3b

   $ 3,000,000.00
   Plus Unknown

**Fill in this information to identify the case:**

Debtor name ___VH 1121 14th St, LLC___

United States Bankruptcy Court for the: ___Eastern___ District of ___Washington___
(State)

Case number (If known): ___23-01264___

☐ Check if this is an amended filing

Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

## Part 1:    Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**
   ☐ No. Go to Part 2.
   ☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

2. **Cash on hand**    $ _____ 0.00

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1. Umpqua Bank | Checking | 1  2  9  5 | $ _____ 2,220.89 |
| 3.2. | | | $ _____ |

4. **Other cash equivalents** *(Identify all)*

| 4.1. N/A | $ _____ 0.00 |
|---|---|
| 4.2. | $ _____ |

5. **Total of Part 1**
   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.    $ _____ 2,220.89

## Part 2:    Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**
   ☐ No. Go to Part 3.
   ☑ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

7. **Deposits, including security deposits and utility deposits**

| Description, including name of holder of deposit | |
|---|---|
| 7.1. Windermere Management Funds held in Trust | $ _____ 8,579.00 |
| 7.2. | $ _____ |

| Debtor | VH 1121 14th St, LLC | Case number (if known) | 23-01264 |
|---|---|---|---|
| | Name | | |

**8. Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

8.1. N/A _____ $_____ 0.00

8.2. _____ $_____

**9. Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81.

$_____ 8,579.00

## Part 3: Accounts receivable

**10. Does the debtor have any accounts receivable?**

☑ No. Go to Part 4.

☐ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

**11. Accounts receivable**

11a. 90 days old or less: _____ − _____ = ........➔ $_____
face amount                doubtful or uncollectible accounts

11b. Over 90 days old: _____ − _____ = ........➔ $_____
face amount                doubtful or uncollectible accounts

**12. Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

$_____ 0.00

## Part 4: Investments

**13. Does the debtor own any investments?**

☑ No. Go to Part 5.

☐ Yes. Fill in the information below.

| | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

**14. Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

14.1. _____ _____ $_____

14.2. _____ _____ $_____

**15. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:                % of ownership:

15.1. _____ _____% _____ $_____

15.2. _____ _____% _____ $_____

**16. Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

16.1. _____ _____ $_____

16.2. _____ _____ $_____

**17. Total of Part 4**

Add lines 14 through 16. Copy the total to line 83.

$_____ 0.00

## Part 5:   Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.

☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. **Raw materials** | ___ MM / DD / YYYY | $ _____ | _____ | $ _____ |
| 20. **Work in progress** | ___ MM / DD / YYYY | $ _____ | _____ | $ _____ |
| 21. **Finished goods, including goods held for resale** | ___ MM / DD / YYYY | $ _____ | _____ | $ _____ |
| 22. **Other inventory or supplies** | ___ MM / DD / YYYY | $ _____ | _____ | $ _____ |

23. **Total of Part 5**

Add lines 19 through 22. Copy the total to line 84.

$ _____ 0.00

24. **Is any of the property listed in Part 5 perishable?**

☐ No
☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☐ No
☐ Yes. Book value _____ Valuation method _____ Current value _____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☐ No
☐ Yes

## Part 6:   Farming and fishing-related assets (other than titled motor vehicles and land)

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. **Crops—either planted or harvested** | $ _____ | _____ | $ _____ |
| 29. **Farm animals** *Examples*: Livestock, poultry, farm-raised fish | $ _____ | _____ | $ _____ |
| 30. **Farm machinery and equipment** (Other than titled motor vehicles) | $ _____ | _____ | $ _____ |
| 31. **Farm and fishing supplies, chemicals, and feed** | $ _____ | _____ | $ _____ |
| 32. **Other farming and fishing-related property not already listed in Part 6** | $ _____ | _____ | $ _____ |

23-01264-WLH11   Doc 45   Filed 10/05/23   Entered 10/05/23 21:05:31   Pg 44 of 59

33. **Total of Part 6.**

    Add lines 28 through 32. Copy the total to line 85.

    $_____0.00

34. **Is the debtor a member of an agricultural cooperative?**

    ☐ No

    ☐ Yes. Is any of the debtor's property stored at the cooperative?

       ☐ No

       ☐ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

    ☐ No

    ☐ Yes. Book value $_____ Valuation method _____ Current value $_____

36. **Is a depreciation schedule available for any of the property listed in Part 6?**

    ☐ No

    ☐ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

    ☐ No

    ☐ Yes

---

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---------|-----------------------------------------------------------|

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

    ☑ No. Go to Part 8.

    ☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---------------------|-------------------------------------------------------|-----------------------------------------|-------------------------------------|
| 39. **Office furniture** | | | |
| _____ | $_____ | _____ | $_____ |
| 40. **Office fixtures** | | | |
| _____ | $_____ | _____ | $_____ |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| _____ | $_____ | _____ | $_____ |
| 42. **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1_____ | $_____ | _____ | $_____ |
| 42.2_____ | $_____ | _____ | $_____ |
| 42.3_____ | $_____ | _____ | $_____ |

43. **Total of Part 7.**

    Add lines 39 through 42. Copy the total to line 86.

    $_____0.00

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

    ☐ No

    ☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

    ☐ No

    ☐ Yes

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

**46.** **Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47.** **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1_____ | $_____ | _____ | $_____ |
| 47.2_____ | $_____ | _____ | $_____ |
| 47.3_____ | $_____ | _____ | $_____ |
| 47.4_____ | $_____ | _____ | $_____ |
| **48.** **Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 48.1_____ | $_____ | _____ | $_____ |
| 48.2_____ | $_____ | _____ | $_____ |
| **49.** **Aircraft and accessories** | | | |
| 49.1_____ | $_____ | _____ | $_____ |
| 49.2_____ | $_____ | _____ | $_____ |
| **50.** **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | | |
| _____ | $_____ | _____ | $_____ |

**51.** **Total of Part 8.**
Add lines 47 through 50. Copy the total to line 87.

| | |
|---|---|
| | $_____ 0.00 |

**52.** **Is a depreciation schedule available for any of the property listed in Part 8?**

☐ No

☐ Yes

**53.** **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☐ No

☐ Yes

23-01264-WLH11   Doc 45   Filed 10/05/23   Entered 10/05/23 21:05:31   Pg 46 of 59

## Part 9: Real property

54. **Does the debtor own or lease any real property?**
☐ No. Go to Part 10.
☑ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 Condominium Unit - 117A 14th Ave, Seattle, WA 98122 | Fee Simple | $ TBD-Mkt Value | N/A | $ Unknown |
| 55.2 Condominium Unit - 117B 14th Ave, Seattle, WA 98122 | Fee Simple | $ TBD-Mkt Value | N/A | $ Unknown |
| 55.3 Condominium Unit - 119A 14th Ave, Seattle, WA 98122 | Fee Simple | $ TBD-Mkt Value | N/A | $ Unknown |
| 55.4 Condominium Unit - 119B 14th Ave, Seattle, WA 98122 | Fee Simple | $ TBD-Mkt Value | N/A | $ Unknown |
| 55.5 Condominium Unit - 121 14th Ave, Seattle, WA 98122 | Fee Simple | $ TBD-Mkt Value | N/A | $ Unknown |
| 55.6 | | $ | | $ |

56. **Total of Part 9.**
Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

$ Unknown

57. **Is a depreciation schedule available for any of the property listed in Part 9?**
☑ No
☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
☑ No
☐ Yes

## Part 10: Intangibles and intellectual property

59. **Does the debtor have any interests in intangibles or intellectual property?**
☑ No. Go to Part 11.
☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets** | $ | | $ |
| 61. **Internet domain names and websites** | $ | | $ |
| 62. **Licenses, franchises, and royalties** | $ | | $ |
| 63. **Customer lists, mailing lists, or other compilations** | $ | | $ |
| 64. **Other intangibles, or intellectual property** | $ | | $ |
| 65. **Goodwill** | $ | | $ |

66. **Total of Part 10.**
Add lines 60 through 65. Copy the total to line 89.

$ 0.00

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)?

☐ No
☑ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☑ No
☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☑ No
☐ Yes

## Part 11: All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**

Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No. Go to Part 12.
☑ Yes. Fill in the information below.

|  | Current value of debtor's interest |
|---|---|

71. **Notes receivable**

Description (include name of obligor)

N/A _____ — _____ = ➜ $_____ 0.00
Total face amount    doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

N/A _____  Tax year _____ $_____ 0.00
_____  Tax year _____ $_____
_____  Tax year _____ $_____

73. **Interests in insurance policies or annuities**

N/A _____  $_____ 0.00

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

N/A _____  $_____ 0.00

Nature of claim _____
Amount requested $_____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

N/A _____  $_____ 0.00

Nature of claim _____
Amount requested $_____

76. **Trusts, equitable or future interests in property**

N/A _____  $_____ 0.00

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

Intercompany Receivable from iCap Vault 1, LLC _____  $_____ 2,844,715.78
_____  $_____

78. **Total of Part 11.**

Add lines 71 through 77. Copy the total to line 90.  $_____ 2,844,715.78

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☑ No
☐ Yes

23-01264-WLH11  Doc 45  Filed 10/05/23  Entered 10/05/23 21:05:31  Pg 48 of 59

| Part 12: | Summary |
|---|---|

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $ 2,220.89 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $ 8,579.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $ 0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $ 0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $ 0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $ 0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $ 0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $ 0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.* ................................➔ | | $ Unknown |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $ 0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $ 2,844,715.78 | |
| 91. **Total.** Add lines 80 through 90 for each column. ..........................91a. | $ 2,855,515.67 | + 91b. $ Unknown |

92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. ........................................    $ 2,855,515.67

Fill in this information to identify the case:

Debtor name **VH 1121 14th, LLC**

United States Bankruptcy Court for the: **Eastern** District of **Washington**

(State)

Case number (If known): **23-01264**

<u>Official Form 206D</u>

☐ Check if this is an amended filing

# Schedule D: Creditors Who Have Claims Secured by Property

**12/15**

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
|---|---|

**2. List in alphabetical order all creditors who have secured claims.**

If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | | **Column A**<br>Amount of Claim<br>Do not deduct the value | **Column B**<br>Value of collateral that supports this claim |
|---|---|---|---|---|

**2.1**

**s1106**

**Creditor's name**

**LIMA ONE CAPITAL**

**Creditor's Mailing Address**

**3960 HOWARD HUGHES PKWY, #500**
**LAS VEGAS, NV 89119**

**Creditor's email address, if known**

**Date debt was incurred**

**Last 4 digts of account number**

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Have you already specified the relative priority?

    ☑ No. Specify each creditor, including this creditor and its relative priority.

    ☐ Yes. The relative priority of creditors is specified on lines

**Describe debtor's property that is subject to a lien**

**Describe the lien**

**Is the creditor an insider or related party?**

☑ No

☐ Yes

**Is anyone else liable on this claim?**

☐ No.

☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**As of the petition filing date, the claim is:**

Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Amount of Claim: $3,000,000.00

Value of collateral: UNKNOWN

| **Part 2:** | **List Others to Be Notified for a Debt Already Listed in Part 1** |

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digts of account number for this entity |
|---|---|---|

23-01264-WLH11 Doc 45 Filed 10/05/23 Entered 10/05/23 21:05:31 Pg 51 of 59

| **Part 3:** | **Total Amounts of the Claims Secured by Property** |

|  | **Total of Claim Amounts** |

**3a. Total of the dollar amounts from Part 1, Column A,**
**including the amounts from the Additional Page, if any.**          **3a.**          **$3,000,000.00**

Debtor name    **VH 1121 14th, LLC**

United States Bankruptcy Court for the:    **Eastern**      District of    **Washington**

                                                (State)

Case number (If known):    **23-01264**

Official Form 206E/F

☐ Check if this is an amended filing

# Schedule E/F: Creditors Who Have Unsecured Claims

**12/15**

**Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.**

## Part 1:    All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?**

   ☑ No. Go to Part 2
   ☐ Yes

                                                              **Total Claim**        **Priority Amount**

**2. |**    **Priority creditor's name and mailing address**            **As of the petition filing date, the claim is:**

                                                         Check all that apply.

                                                         ☐ Contingent
                                                         ☐ Unliquidated
                                                         ☐ Disputed

       **Date or dates debt was incurred**                              **Basis for the claim:**

       **Last 4 digts of account number**

       **Specify Code subsection of PRIORITY unsecured**            **Is the claim subject to offset?**

       **claim: 11 U.S.C. § 507(a) (_____)**                     ☐ No
                                                                     ☐ Yes

## Part 2: All Creditors with NONPRIORITY Unsecured Claims

**3.** **Do any creditors have nonpriority unsecured claims?**

☑ No.
☐ Yes

**Amount of Claim**

**3.1** **Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**

Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date or dates debt was incurred**

**Last 4 digts of account number**

**Basis for the claim:**

**Is the claim subject to offset?**

☐ No
☐ Yes

23-01264-WLH11  Doc 45  Filed 10/05/23  Entered 10/05/23 21:05:31  Pg 54 of 59

## Part 3:   List Others to Be Notified About Unsecured Claims

List in alphabetical order any others who must be notified for claims already listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 or Part 2 did you enter the related creditor? | Last 4 digts of account number for this entity |
|---|---|---|

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |

**5. Add the amounts of priority and nonpriority unsecured claims.**

**Total of Claim Amounts**

**5a. Total Claims from Part 1**                     5a.        $0.00

**5b. Total Claims from Part 2**                     5b.    +    $0.00

**5c. Total of Parts 1 and 2**                       5c.        $0.00
    Lines 5a + 5b = 5c.

23-01264-WLH11  Doc 45  Filed 10/15/23  Entered 10/15/23 21:05:31  Pg 56 of 59

☐ Check if this is an amended filing

## Official Form 206G

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

**1. Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| 2. 1    **State what the contract or lease is for and the nature of the debtor's interest**    PROPERTY MANAGEMENT <br><br> **State the term remaining** <br><br> **List the contract number of any government contract** | JMW GROUP \| WINDERMERE PROPERTY MANAGEMENT <br> 210 SUMMIT AVE E <br> SEATTLE, WA 98102 |

Fill in this information to identify your case:

| Debtor 1 | VH 1121 14th, LLC | | |
|---|---|---|---|
| United States Bankruptcy Court for the: | Eastern | District of | Washington |
| | | | (State of) |
| Case Number (if known): | 23-01264 | Chapter | 11 |

☐ Check if this is an amended filing

# Official Form 206H

## SCHEDULE H - CODEBTORS

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No   Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G. Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.**

| | Column 1: Codebtor Name and Mailing Address | Column 2: Creditor Name | Check all schedules that apply: |
|---|---|---|---|
| 2.1 | CHRISTOPHER J CHRISTENSEN 27112 SE GRAND RIDGE DRIVE ISSAQUAH, WA  98029 | LIMA ONE CAPITAL | ☑ D ☐ E/F ☐ G |

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☑ *Schedule H: Codebtors* (Official Form 206H)
- ☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* ____
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    11/15/2023        ✗   /s/ Lance Miller
            MM / DD / YYYY            Signature of individual signing on behalf of debtor

                                   Lance Miller
                                   Printed name

                                   Manager
                                   Position or relationship to debtor